GRISSOM *v.* COMMERCIAL NATIONAL BANK.

(*Nashville.* February 23, 1889.)

1. BANKS. *Authority to pay depositor's note. Not presumed when.*

The fact that a note is made payable at a bank does not, without more, confer authority upon the bank to pay the note, when due to and presented by a third person, out of funds standing, on deposit, to credit of the maker, at maturity of note.

Cases cited and approved: McGill *v.* Ott, 10 Lea, 147; Bynum *v.* Apperson, 9 Heis., 638; Lane *v.* Bank, 9 Heis., 436; 15 Vroom, 638 (S. C., 43 Am. Rep., 167); 41 Ill., 267; 109 Ill., 479; 60 Ind., 160; 132 Mass., 151; 34 La., 604; 32 Mo., 191; 29 Mich., 9.

Cited and discussed: 9 Cranch, 9; 46 N. Y., 82; 80 N. Y., 106; 105 Penn. St., 496; 55 Iowa, 75, and other cases.

2. SAME. *Same. Custom.*

Custom, to authorize such payment, must be general, uniform and certain, and known to both parties. They are presumed, in such case, to contract with reference to such custom.

Cases cited and approved: Dabney *v.* Campbell, 9 Hum., 686; Saint *v.* Smith, 1 Cold., 52; 15 Hon., 545.

3. SAME. *Set-off. Estoppel.*

Where a bank has without authority paid note on which its depositor is accommodation indorser, it is estoppel to claim such payment as a set-off against the depositor, where, by reason of the bank's failure to give notice of the payment, the indorser is deprived of effectual recourse against his principal.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

STOKES, PARKS & STOKES for Grissom.

CHAMPION & HEAD for Bank.

FOLKES, J. This is a bill brought by complainant to recover of the defendant the sum of one thousand dollars, claimed as a balance due after crediting the bank with all - checks drawn against sundry deposits made therein by the complainant as a customer of the bank.

The defendant interposes two defenses. It admits that between May 1, 1886, and July 27, 1887, the complainant made deposits with it in sundry sums, aggregating $5,134.05, but says that it has paid out the same, for and on account of complainant, upon sundry checks, except as to $1,000, which it says was paid upon and in discharge of a note of complainant for that amount, made and dated at Nashville, March 26, 1887, and payable sixty days after date, to the order of J. D. Carter & Co., *at the Commercial National Bank*, Nashville, endorsed by J. D. Carter & Co., and by Jno. F. Wheless, the latter of whom, as the owner and holder thereof, placed the same in the Fourth National Bank of Nashville for collection. That on May 28, the last day of grace, the note was, by the Fourth National Bank, presented for payment at the defendant's banking house, where it was marked "good" by defendant, and was, on May 30th, paid by defendant to the Fourth National Bank, and the amount thereof charged up to complainant in the same

manner as though it had been a check drawn by complainant.

It claims that it was, and is, the custom of the banks in Nashville, where notes are made payable at a particular bank, to pay such notes when the maker has sufficient funds to his credit for that purpose, without instructions, and to charge the same to the general account of the maker.

It also insists, that independent of custom, it has the right to treat a note so made as the equivalent of a check, and as a direction, therefore, on the part of the maker, to pay same on his general account as a depositor.

The Chancellor found both defenses in favor of the bank, and dismissed the bill.

Complainant has appealed, assigning errors.

We will consider first the matter of custom.

The defendant introduces the testimony of the officers of four banks in the city of Nashville, who say that such a custom, with certain modifications and variations, prevails at their respective banks, and, so far as they know, at the banks in the city generally. But these witnesses are not agreed as to the manner of exercising the usage. Mr. Porterfield, of the defendant bank, says it is the custom with his bank to pay such notes, unless on their face they appear to have been given for land, in which event they are not paid.

Mr. Williams, of the First National Bank, says that while the habit of his bank was to pay such notes, they did not pay land notes, nor where

there was "some complication" about them. Mr.
Keith, of the Fourth National Bank, proves that
it was the custom of his bank to pay such notes,
and that he knows of no exceptions to the rule,
although his bank may have made some. Mr.
Jones, of the American National Bank, says that
it is the custom with his bank to pay such notes
if given by mercantile men, but where given by
men not so engaged they ask for instructions be-
fore paying; and that, immediately upon paying a
note under the usage referred to, his bank always
gave written notice to the depositor that such pay-
ment had been made. If the custom of this last
bank, as to giving notice, had been followed by
the defendant bank, it is probable that this suit
would never have been brought, as the complain-
ant would have had opportunity of protecting him-
self by recourse over on the parties for whom he
was accommodation maker, as will appear later on.

It is clearly proven that such a custom was
not known to this complainant, who was a lumber
man, living in a small town in the State of Ken-
tucky, two or three hundred miles from Nashville.

From what has already been stated, as to the
proof on this subject, it is clear that the defend-
ant cannot justify its payment of the note in
question upon the ground of custom.

It is well settled that, to be binding, a custom
must be general, as to place, and not confined to
any particular bank or banks; it must be certain
and uniform, and there must be reasonable ground

to suppose that the custom was known to both parties to the contract, as it is upon this supposition that the parties are presumed to have contracted with reference to it. *Dabney* v. *Campbell,* 9 Hum., 686; *Saint* v. *Smith,* 1 Cold., 52; *Adams* v. *Otterbach,* 15 How., 545; Morse on Banking, Sec. 9 (Ed. 1888).

Having failed, then, to show a right to pay the note upon the ground of a usage or custom, binding upon this complainant, we are confronted with the proposition that, independent of usage, the bank, at whose place of business a note is, upon its face, made payable, has the right to treat the note as a check, and pay same, and charge it up to the account of the maker, where such maker is a depositor of the bank.

The question is presented for the first time in this State, although it has received the attention of text writers, and been passed upon by the Courts of other States, where we find a conflict of opinion.

Under such circumstances it is our duty to determine the question for ourselves upon reason and principle, and with a due regard for considerations of public policy and convenience, provided that in doing so we do not place our State in antagonism to the current of authority in this country.

We recognize the fact that it is of prime importance that the several States in this Union should, as far as may be, without doing violence to well settled principles of State jurisprudence,

endeavor to bring about and maintain as much certainty and uniformity of decision on questions of commercial law as can be accomplished.

In response to this idea we would, upon the question now before us, yield much of the strong conviction we entertain thereon in the endeavor to place ourselves in line with the current of authority, if a strong and steady current could be found, which would not threaten to engulf and destroy distinctions which have been long well settled in this State.

While we must concede that the weight of text-book authority is in support of defendant's contention, we are unable to discover that the weight of judicial decision is in the same direction. Moreover, we are constrained to believe that the contrary view is more in harmony with well settled adjudications in this State, upon principles presenting analogous questions, and that the current of adjudged cases is certainly as strong in the same direction.

Let us see, in the first place, what is the relation between depositor and banker. It is merely that of debtor and creditor, where the deposit is not a special one. The money deposited in the ordinary course of business is at once blended with the general funds of, and becomes the property of the bank; the depositor has only a debt against the bank, payable on demand, upon the presentation and surrender of the draft or order, addressed to and directing the bank, in unequiv-

ocal terms, to pay the amount of such draft to the person therein named, or to bearer. This order is commonly known in commercial and banking parlance as a check.

Reduced to its last analysis, then, the question at issue here may be said to be: If a creditor makes a note payable to a third party, at his debtor's place of business, does it operate as an order on the debtor to pay the note in the absence of any instructions, and in the absence of any understanding or agreement growing out of the previous course of dealing between the parties?

In the absence of authority the question would seem to carry its own answer in the negative.

In *McGill* v. *Ott*, 10 Lea, 147, this Court has said:

"A man who receives the money, as agent of another, cannot simply, in that capacity, make an application of such money to the payment of his principal's debt without the assent, expressed or implied, of the principal. The fact that the debt is due to him cannot change the principle. He was bound to account for the money to his principal, it is true, but this simply made him his debtor to that amount. If sued for it, he might, under our law, set off his debt under a plea, and then hold the money subject to such an adjustment of their rights. But this goes on the idea that each is debtor to the other, and not that one debt has paid the other."

The fact that the note was payable *at* the bank could not change the principle aimed at in . the decision just quoted, unless we are to read the words *payable at* the bank as synonymous with the words payable *by* or *through* the bank.

It will be admitted that there is nothing in the primary meaning nor general signification of the terms to warrant the use of the words in the sense in which they are to be understood if the contention of defendant is to prevail.

It is equally plain that there is nothing in the origin and purpose of the words " payable at the bank," as used in notes, to justify the meaning sought to be given them.

The language is no necessary part of the instrument. It is as valid when made payable generally as when made payable at any particular place. Its purpose, as generally understood, is to designate a place where the holder may find the maker, and ascertain whether the latter is ready, able, and willing to pay the same; if not, then, having made demand at the place designated, there remains nothing for the holder to do but give notice to indorsers that such demand has been made and refused, as required by the law merchant, as a condition precedent to recourse on such indorsers.

For a while in England it was· held that the failure to present at the place named on the note discharged the maker, and the conflict of decision between the Court of King's Bench and the Court

of Common Pleas, before the decision of the House
of Lords in 1820, in *Rowe* v. *Young*, in accord-
ance with the decision of the Common Pleas, re-
versing the judgment of the King's Bench, was
finally settled in 1 and 2 Geo. IV. Ch., 78, which
enacted that an acceptance "payable at the house
of a banker or other place" should be deemed a
general acceptance, unless the words "and not oth-
erwise or elsewhere" were added. 1 Am. Lead.
Cases, 456 (364). But the almost unbroken cur-
rent of authority in this country is that, so far as
the maker of a note or the acceptor of a bill
is concerned, the designation of a place of pay-
ment does not make a conditional liability depend-
ent on presentment and demand at such place, but
is an absolute liability to pay generally. So that
practically the insertion of the place of payment
is without utility so far as the maker is con-
cerned; and its principal, if not its sole, office,
practically, in this country now, is to dispense
with the inconvenience and uncertainty attending
the presentment and demand upon the maker at
the proper place to fix the conditional liability of
indorsers. With the place of payment designated
on the face of the note, no question can arise as
to due diligence, etc., on the part of the holder
in his efforts to make demand on the maker; he
has only to present it at the place named, with-
out regard to the residence or place of business
of the maker, and, if dishonored, give notice to
the indorsers, and the latter become liable.

That such is the view taken by our Court of the purpose and effect of such a clause in a note, see *Bynum* v. *Apperson*, 9 Heis., 638, where it is said: "By making the note payable at the bank it was fairly contemplated by the parties that the payment should be made *at* the bank." And in *Lane* v. *Bank of West Tennessee*, *Ib.*, 436, it is said: "And if the note be payable at a particular bank, and before the day of payment arrives that bank has no place of business, and ceases to exist, and another does business in the same room, it is sufficient to present the note for payment at their room."

While the question now under consideration was not presented nor discussed in the two cases just cited, they serve to illustrate the argument that the use of said terms in no sense converts the note into a check.

If such a clause in a note converts it into a check, or, in the language of the text-books cited by defendant, is tantamount to an order to pay same out of the funds of the maker on deposit with the bank at which the note is made payable, it would seem to follow that the failure of the holder to present same, and the subsequent insolvency of the bank with funds of maker on hand sufficient to pay same, would discharge the latter, and cast the loss on the holder, whose negligence was the occasion of the loss; and such is the holding of some of the cases which constitute, in part, the authority upon which the text writers lay down

the principle contended for here by the defendant bank. See *Lazier* v. *Horan*, 55 Iowa, 75 (S. C., 39 Am. Rep., 167), referred to by Mr. Daniel, in Note 3 to Sec. 326*a* of the 3d Edition of this valuable work, as justifying the text, in this language, "And other well-considered cases sustain this view." The "well considered cases" are *Lazier* v. *Horan*, *supra*, and *Thatcher* v. *Bank*, 5 Sand., 130; the *Ætna National Bank* v. *Fourth National Bank*, 46 N. Y., 88; and *Home National Bank* v. *Newton*, decided by the First District Appellate Court, Chicago, and reported in the Banker's Magazine for July, 1881, 8 Bradwell, 563, which we will presently examine.

The unsoundness of *Lazier* v. *Horan* is demonstrated in *Adams* v. *Hackensack Improvement Commission*, 15 Vroom, 638 (S. C., 43 Am. Rep., 406), where, after an able discussion of the authorities, it is said: "The naming of a bank in a promissory note as the place of payment does not make the banking association an agent for the collection of the note or the receipt of the money. No power, authority, or duty is thereby conferred upon the banker in reference to the note, and the debtor cannot make the banker the agent of the holder by simply depositing with him the funds to pay it with."

It shows that *Lazier* v. *Horan* was decided entirely on the authority of Sec. 229 of Story on Notes. No cases were cited in support of the proposition, and it overlooked the holdings to the

contrary in the English cases of *Sebag* v. *Abitbol*, 4 M. & S., 462; *Turner* v. *Hayden*, 4 B. & C., 1.

It is also at variance with *Ward* v. *Smith*, 7 Wall., 447; *Williamsport Gas Company* v. *Pinkerton*, 95 Penn. St., 62.

The point decided in the cases last cited, while of course not conclusive of the question before us, is instructive by analogy, and establishes the unsoundness of the adjudications invoked to sustain the contrary view.

Equally unsound is the case of *Home National Bank* v. *Newton*, from the District Appellate Court of Chicago. At least it would so appear from the statement of what it holds, as found in the note to Daniel on Neg. Inst., just above referred to, which is all the information we have on the subject, as we have not had access to the case. The quotation made therefrom by Mr. Daniel (Vol. I., Sec. 326a, Note 3, p. 302) is as follows:

*First*—"As it is the duty of the bank to pay its customer's checks when in funds, so, at least, it has authority, if it is not under actual obligation, to pay his notes and acceptances made payable at the bank."

*Second*—"It is a presumption of law that if a customer does so make payable, or negotiable, at a bank any of his paper, it is his interest to have the same discharged from his deposit."

*Third*—" *The neglect of the bank to make such appropriation would discharge the indorsers and sureties.*"

*Fourth*—The act of thus making his paper pay-

able at a bank is considered as much his order to pay *as would be his check,* and if the bank pay without express orders to the contrary, it is a defence to a suit by the depositor for money so paid."

*Fifth*—"And the rule seems to be settled that if a bank *advances* the money to pay a bill or note of its customer, made payable at the bank, it may recover from the depositor *as for money loaned,* the paper so made payable being equivalent to a request to pay."

*Sixth*—"He makes the bank his agent, with implied authority to protect his credit by appropriating his deposits to the payment of his maturing obligations made payable at the bank."

The italics and the numbering of the paragraphs are ours, made for the purpose of emphasis and reference.

Now, are we willing to go this far? Must we establish as the law of this State the several propositions above announced, each akin, and logically dependent one upon the other?

Surely not, unless compelled by the overwhelming weight of authority. Does it not open a very Pandora's box of evils rife with litigation, and most hurtful in their character? Does it not alike astonish the professional and lay mind?

Does it not introduce, by arbitrary "presumptions of law," liabilities not "so nominated in the bond," and impose upon parties to commercial paper responsibilities not contemplated by them, and hitherto unknown? Does it not inject into the

every day transactions of business men, where uniformity and certainty should be the corner-stones, elements of uncertainty and risk too grievous to be borne?

Is the liability of indorsers and sureties to depend upon the pleasure of the bank, whether or no it will appropriate the deposits of the maker to the payment of his notes, under the first and third propositions above.

If the bank should pay checks, drawn on the day of the maturity of a note of the maker, in favor of itself, or of a third party, to the exhaustion of the drawer's deposits, is it to be liable to the holder of the note for not having withheld sufficient funds to pay the latter? and is a twin suit to be born out of the same transaction between the holder and the sureties or indorsers, as to whether or not they have been thereby discharged, they, perhaps, having given notice to the bank, that unless deposits sufficient are held they will claim their discharge?

If the bank should, under such notice, deem it safer to withhold deposits sufficient for the note, is it to then encounter a suit with the holder of a check unpaid?

Is the maker of a note, where there has been a total failure of consideration, giving him a good defence to the note as against the payee or purchaser, not in due course of trade, to be held liable to the bank, which, in the absence of deposits, has gone forward and paid the note for the maker, ad-

vancing the money therefor under the fifth proposition, authorizing the bank to treat the note, made payable months before at its house, as equivalent to a check or request to pay?

On the other hand, if the bank should fail to pay a note so made payable, where there were deposits sufficient, whereby the note is protested, is the bank to become a defendant to a suit for damages for injury to the credit and business of the maker, upon the authority of the sixth proposition, to the effect that the note so made constituted the bank the maker's agent to protect his credit out of the latter's deposits?

Illustrations of the inconvenience and hardships of the rule which we are urged to establish could be multiplied almost indefinitely, and are such as to readily suggest themselves to thoughtful men acquainted with the practical affairs of commercial life.

To hold a note payable at a particular bank as tantamount to a check on the bank is to confound distinctions heretofore established and well settled in the adjudications of this State between notes and checks.

A check is defined to be a written order on a bank directing it to pay a certain sum of money; a note is the written promise to pay another a certain sum of money at a certain time. One is payable on presentation, the other is payable on a certain day. One is entitled to days of grace, the other is not. One is an order on a third party,

the other is the undertaking of the party himself. One is an *appropriation* of so much money in the banker's hands, the other is a *promise* to pay.

On the check, ordinarily, no right of action accrues until after presentment for payment; on the note a right of action against the maker exists without such presentment. 11 Hum., 88, *Blair v. Bank of Tennessee;* 2 Yer., 81, *Mulherrin v. Hannum;* 7 Bax., 301, *Springfield v. Green;* 7 Heisk., 190, *Planters Bank v. Merritt, Administrator;* 4 Yer., 216, *Brown v. Lusk.*

For these and other considerations, we cannot yield our assent to the doctrine urged by the defendant, and upon which the cause was decided in the Court below. We hold, therefore, that there is no implied authority for a bank to pay to a third party a note, made payable at its place of business, simply because of the fact that the maker has funds sufficient for that purpose, in the absence of any course of dealing or previous instruction to so apply the deposits.

Nor are we without express authority to sustain this conclusion.

The Supreme Court of Illinois, in the case of *Wood v. Merchants Savings Company*, 41 Ill., 267, has reached the same result in principle. The action was on a note payable at the banking house of Conrad. The holder presented the note, had it marked "good," but it was not paid. The bank failed, and the maker was sued on the note. The defense was that the maker had funds sufficient

on deposit with the bank to pay the note; that it was the duty of the bank to have paid it when presented.    The Court say:

"Had Conrad any authority whatever to pay the note out of the funds on deposit in his bank to the credit of the maker?    The custom sought to be established among bankers has nothing, in our judgment, to do with the question.    What is the effect of making a note payable at a particular place?    Was it ever before heard that the effect was to transfer, *ipso facto,* the money at the place belonging to the maker absolutely to the holder, on his presenting the note at the place of payment?    There is no such rule in any commercial country of which we have any knowledge. We do not understand that the fact of making a note payable at a particular place amounts to an agreement that the maker may make a deposit at the bank of the amount of the note, and thus discharge his obligation, and that the money so deposited is at the risk of the holder of the note.    It is a mere designation of the place *where* the note is to be paid, not of the person to whom the money is to be paid.    By the terms of the note the money was to be paid by the makers to the payee, not *to* (and it might have added *by*) Conrad, but *at* Conrad's banking house.    *    * *    *    If this be so, if the holders of this note were under no obligation to present this note at Conrad's counter, does the fact that it was presented change the liability of the party in any

way?   *   *   *   Conrad had no right to pay it, nor could the money be taken to pay it, except by means of the verbal order, check, or draft of the maker and depositor."

The principle of that case is reaffirmed in *Bank* v. *Patton*, 109 Ill., 479.

In *Scott* v. *Shirk*, 60 Ind., 160, the Court say: "A bank of deposit has no power to apply a money deposit in its possession belonging to the maker of a promissory note, payable at such bank, to the satisfaction of such note, without his consent."

To the same effect is *Exchange Bank* v. *Bank of North America*, 132 Mass., 151, where the Court say: "The case expressly finds that Carnick, Calvert & Co. never had given any authority to the plaintiff to pay their notes out of their funds on deposit. Such authority cannot be implied merely from the fact that they made their notes payable there," citing in support of this proposition *Wood* v. *Merchants Savings Company*, 41 Ill., 267, above. This was as late as 1882, from a State of the highest authority on questions of commercial law.

The case of *Gordon* v. *Muchler*, 34 La. An., 604, is said to have settled for the State of Louisiana this question in the same manner. But we have been unable to examine this volume, it being misplaced from our State Library.

The Supreme Court of Missouri, as reported in the text-books, seems strongly to intimate a simi-

lar holding.    In *Bank* v. *Carsons*, 32 Mo., 191, the Court is quoted as saying: " The bank *is not bound* to apply the deposits, if it has even the authority to do so."

The text-books generally, which are cited as sustaining the defendant's contention, agree that it is not the duty (but merely a privilege that may or may not be exercised by the bank) of the bank to so apply deposits of the maker.

Surely this will not do to leave the action of the bank, upon which so many important, not to say intricate, rights of other parties depend, open to the uncertainty that must follow its optional exercise by the bank.    We quite agree with Mr. Daniel in his work on Neg. Inst., Vol. I, Sec. 326*b*, that the question should be settled definitely, and not left to the option of the bank.

But we think it much sounder and safer to hold that, in the absence of instructions, either expressed or to be implied from previous course of dealings between the maker and the banker, the bank has no authority to apply the funds of its depositors to the payment to third parties of notes payable at its bank.

We limit this decision to a payment made to a third party, because we are not called upon to decide any but the case before us, which, as we have seen, is one of a payment to a third party.

The right of the bank to retain out of deposits sufficient to pay itself, where the bank is the holder and owner of the note, is quite a different

question, involving an application of the law of set-off, and is not intended to be affected by any thing said in this opinion.

We close the citation of authority which is in accord with our conclusion, by a reference to 1 Edwards on Bills and Notes, star page 166, Sec. 195 (3d Ed., 1882), where the learned author says: "The better opinion undoubtedly is that the bank has no right to pay out the money of a depositor except upon his order, or with his assent," citing approvingly the 41 Ill. and the 60 Ind. cases above referred to.

See also Newmark on Bank Deposits (1888), Sec. 119, p. 120, where in the text it is said:

"A banker has no right to apply money on deposit in his bank to the payment of a note of the depositor, payable at the bank, without the order of the depositor," citing the case already referred to by us of *Ridgely National Bank* v. *Patton*, 109 Ill., 479.

If we consulted our own convenience and the necessities of the case, we would end this opinion here. But it has been so strenuously urged at the bar that the great weight of authority is the other way that it becomes proper, if not necessary, to refer to the authorities upon which such claim is predicated.

We have laboriously and at length examined every thing that has been available to us that presents the other side; but, owing to the length to which a review of cases ordinarily leads, we

24

will try to be brief in what we have to say in relation thereto.

It is true that Bolles on Banks and their Depositors, Sec. 403, and Morse in his work on Banks and Banking, Vol. II., Sec. 557, and Pratt in his Manual of Banking Law, Chap. 10, p. 44, after stating that there are authorities both ways, say the weight of authority is that it is the privilege of the bank (to be exercised or not as it may see proper) to apply deposits to the payment of a note of the depositor payable at its bank.

The American cases cited by these text writers are the same, and consist in the main of the following: *Manderville* v. *Union Bank*, 9 Cranch, 9; *Ætna National Bank* v. *Fourth National Bank*, 46 N. Y., 82; *Indig* v. *National City Bank*, 80 N. Y., 106; *Commercial National Bank* v. *Henninger*, 105 Penn. St., 496, and a few other cases where the bank was itself the holder of the note.

The States represented are not so numerous, as appears from their citations, as those who hold as we do, while the cases themselves will not stand close scrutiny.

Great prominence is given the case of *Manderville* v. *Union Bank of Georgetown*, from the Supreme Court of the United States, reported in 9 Cranch, 9. All the text-books quote the following language from the opinion in this case, pronounced by Chief Justice Marshall: "By making a note negotiable in bank the maker authorizes the bank to advance on his credit to the owner of the

note the sum expressed on its face," and announce the doctrine as contended for. The few cases in the same direction build with equal confidence upon this decision. It must be admitted that when taken by itself the language quoted does seem to sustain them. But when we examine the facts in that case it becomes manifest at a glance that the point really decided, and to which the language was intended to apply, is as foreign to the question we are considering as it could well be, and does not relate at all to commercial paper.

The facts of the case were briefly these: Manderville, a citizen of Virginia, executed his note to one Nourse for $410.50, sixty days after date, *negotiable* at the *Union Bank* of Georgetown, *payable* at the *Bank of Potomac*, in Alexandria. On the day of its execution the note was negotiated and discounted by the Union Bank of Georgetown, and the proceeds thereof paid over to Nourse. After this, Nourse, becoming indebted to Manderville, executed to him his note, due in sixty days, "*negotiable* at the Bank of Alexandria, *payable* at the Bank of Columbia."

When the note given by Manderville and discounted by the Union Bank fell due it was not paid, and the Union Bank sued Manderville thereon. He defended, trying to set off against the note the debt he held against Nourse. It was insisted for Manderville that his rights must be determined according to the laws of Virginia, the *lex loci con tractus*, and that under the laws of that State a

defendant is allowed to set off against the assignee of a promissory note any just claims which he had against the original payee before notice of the assignment of the note.

For the bank it was said that it was immaterial by which law the note was to be governed, for it was made with a view, expressed on its face, to be discounted by the Union Bank, whereby the defendant had waived any offset to which he might otherwise have been entitled. The Court in deciding the question said, and we give the opinion entire *in haec verba:*

"It is entirely immaterial whether this question be governed by the laws of Virginia or of Maryland. By neither of them can the discounts claimed by the plaintiff in error be allowed. By making a note *negotiable* in bank (the italics are ours) the maker authorizes the bank to advance on his credit to the owner of the note the sum expressed on its face.

"It would be a fraud on the bank to set up offsets against this note in consequence of any transactions between the parties. These offsets are waived, and cannot, after the note has been discounted, be again set up. The judgment is to be affirmed, with damages at the rate of six per cent. per annum."

Thus we see that no possible question arose upon that part of the note making it *payable at* the Bank of Potomac, nor *with* that bank, but upon that part of the note making it *negotiable* at

the Union Bank and with the latter bank, and no question of the *application* of bank *deposits* in any shape is presented. The only matter considered, or that could possibly have been considered by the Court, was whether a party having authorized a bank to discount his note could thereafter set off debts he held against the payee of the note. The facts of this case were not published in the earlier Cranch reports, which doubtless accounts for the misconception of the opinion by the usually accurate, and always learned, text writers, who have made it the ground work of the effort to establish the rule as contended for by defendants in the case at bar. The facts will be found in "The Lawyers' Co-operative Publishing Company's" Edition of the U. S. Supreme Court Reports.

The case of *Com. Nat. Bank* v. *Henninger*, 105 Penn. St., 496, is greatly relied on by the text-books above referred to. There the bank was the holder and owner of the note, and the maker was B. F. Young, its cashier. At the close of business on the day of the maturity of the note there were funds of the cashier on deposit sufficient to pay it.

The cashier, instead of charging up said note against his deposit, handed it to a Notary for protest, the object being to hold the indorser, and compel him to proceed against the maker in order to let in a defense which the maker could not set up against the bank. The suit was by the bank agaist the indorser, who claimed to be discharged

by the facts stated. The Court, among other
things, say:

"Where the depositor becomes indebted to the
bank on one or more accounts, and such debts
are due and payable, the bank has the right to
apply any deposit he may have to their payment.
This by virtue of the right of set-off. Where a
general deposit is made by one already indebted
to the bank the latter may appropriate such deposit
to the payment of such indebtedness."

And while admitting that the bank might waive
this right of set-off, so far as it was concerned,
yet where the rights of other parties were con-
cerned the waiver may result in releasing sureties;
the Court illustrating the ground of the decision
in the following language:

"If I am the holder of A's note, indorsed by
C, and when the note matures I am indebted to
A in an amount equal to or exceeding the note,
can I have the note protested, and hold C as in-
dorser? It is true A's note is not technically
paid, but the right to set-off exists, and surely C
may show, in relief of his obligation as surety,
that I am really the debtor instead of the creditor
of A. If this be so between individuals, why is
it not so between a bank and an individual?"

How far removed this case is from supporting
the doctrine as contended for here is too manifest
to justify elaboration, yet it is cited in the text-
books as sustaining the assertion that the weight
of authority is in favor of the right of a bank,

without regard to whether it is or not the holder of the note, to appropriate deposits of maker to its payment upon the idea that a note made payable at the bank is tantamount to a check on the bank.

Let us see next what is in the case of *Indig* v. *National City Bank*, 80 N. Y., 100. Plaintiff held a note payable at the Bank of Lewville. He deposited it with the defendant bank for collection, who sent it by mail to the Bank of Lewville. On maturity the Bank of Lewville charged the note up to the maker, he having funds there on deposit, and forwarded its draft to defendant. The Bank of Lewville failed before the draft was cashed. The plaintiff sued the defendant for the amount of the note, which amount he alleged was lost through defendant's negligence. It was insisted for the plaintiff that defendant, by sending the note to the Bank of Lewville, constituted that bank its agent for the collection of it, and "therefore liable for the proceeds, as having been received by the Bank of Lewville, the last named bank being deemed to have received the proceeds by charging the amount of the note against its customer, the maker." The Court, in response, say:

"We do not think that any such agency was created. The note, *in so far as relates to its presentment at the bank*, and the duties of the bank in respect to it, was equivalent to a check drawn by the maker upon the bank where the note was

made payable," citing *Ætna National Bank* v. *Fourth National Bank*, 46 N. Y., 88.

We will first observe that the portion of the opinion which we have taken the liberty of italicizing is directly in conflict with the decisions in our own State with reference to the duties of the holder of a note so payable as to the non-necessity of presentment, etc., and overlooks and confuses the distinctions we have already pointed out between a check and a note as to presentment.

The right of the Bank of Lewville to pay the note, because made payable at its place of business, was not the issue in that cause, but in the argument upon the non-liability of the defendant the Court merely assumed upon the authority of the Ætna Bank case in 46 N. Y. that such was not the law. So that, for the soundness of the doctrine, we must turn to the 46 N. Y. case. When we read the syllabus we are told that it simply decides that a direction of a bank depositor to his bank to pay out his funds on his notes due and to become due, in a certain order, creates no trust in favor of the holders of such notes, and that they have no right of action against the bank for its failure to comply with the depositor's instructions. The facts were that the Florence Mills, a Connecticut corporation, had made two notes, payable at the counter of the defendant; one fell due April 2d and the other April 4th. The note falling due on the 2d of April was presented for payment, and protested for non-payment. On the

3d of April the Mills Company sent a letter to the bank containing a draft (which, with a small balance to the credit of the Mills, was sufficient to pay either note, both being for the same amount), with directions to credit their account with the draft, and then to pay their note falling due on the 4th. The draft was collected on the 3d, the day it was received, and on the same day the bank paid the note that had been protested on the 2d. The note due on the 4th not being paid, the holder sued the defendant, insisting that the letter directing how the proceeds of the draft should be applied operated as an equitable assignment or appropriation of the proceeds to the payment of its note falling due on the 4th.

This alone was the issue, and such was the Reporter's understanding of it, as shown by the syllabus. The opinion takes a much wider range, and does announce the doctrine as broadly as here contended for, that a note payable at a particular bank is, in substance, a check.

But that part of the opinion making the announcement is without any citation of authority or process of reasoning to sustain it, and it is difficult to understand exactly upon what the Court predicated its opinion that the note was the equivalent to a check. In two paragraphs it seems to be placed upon the agreement or understanding of the parties, and in another upon commercial usage, while in another it seems to be predicated upon the legal effect of the note so written.

Nor does it appear that the defendant bank was not itself the owner of the past due note to which the deposit was applied, in violation of the instructions of the depositor.

Moreover, the opinion was by a divided Court, Chief Justice Church dissenting. So that our answer to this case, which is much relied on by the defense here, is that what is said concerning the question now before us was incidental merely, unsupported by reason or authority, and with an ambiguity of statement of facts, so far as this question is concerned. And we may be permitted to add that on the very point decided it is of most questionable soundness. It virtually holds that a customer of a bank cannot make a deposit, with instructions accompanying the same, to apply proceeds to a note of the depositor maturing on the succeeding day, that would prevent the bank from applying the proceeds to a note past due before the deposit was made. It seems not only to create a new law for banks, but it strikes down the well-established right of a debtor, unable to pay two debts, to direct and control the application of his payments to the one he may prefer.

The authority of such a decision, viewed from any stand-point, is not sufficient to overturn our convictions, nor break the force of the well considered cases holding to the contrary.

In *Pease* v. *Warren*, 29 Mich., 9, Judge Cooley says: "It cannot be pretended that the making a note payable at a particular bank can make the

bank the agent of the *payee* to receive payment," and we ask, Would this not be just as fair and reasonable reading of the terms as it is to construe them to make the bank the agent of the *payor* to make payment? They would serve the one purpose as well as the other; and there is as much authority for the one holding as the other, and several of the cases cited as sustaining the defendant's contention here, do go to the very point of deciding what Judge Cooley says is not law. Such is the decision in *Lazier v. Horan*, 55 Iowa, 75, already herein referred to.

It is true that Mr. Daniel in the 3d Ed., Vol. I., Sec. 326*a*, of his valuable work on Neg. Inst., says that in his previous editions he had taken a different view, but that he is now of opinion that he was wrong, and that "upon principle and authority we should say that a banker at whose place of business negotiable paper is made payable, may apply to its payment funds of the maker on deposit, at its maturity, the relations of banker and customer and the terms of the instrument justifying the inference that the customer intended this to be done," citing in note the case of *Indig v. National City Bank*, 80 N. Y., 106; and adds in the text, "And other well considered cases sustain this view," referring to *Lazier v. Horan*, *Thatcher v. The Bank*, *Ætna Nat. Bank v. Fourth Nat. Bank*, and the case of *Home Nat. Bank v. Newton*, already so freely quoted from by us. While we entertain for this distinguished author the highest

respect for his learning and accuracy [and the writer especially esteeming him no less highly personally than professionally], we are constrained to believe that the view expressed in the previous editions of his work is sounder and more in keeping with authority and reason, and the necessities of the large interests concerned, than is found in the last. There is no new light shed on this subject that, in our opinion, justifies the change of view.

This author seems to consider separately the rule as applied to acceptances and to notes, and as to acceptances he says: "It may be regarded as well settled law in England, that an acceptance payable at a particular banker's is tantamount to an order on the banker to pay same to the person who, according to the law merchant, is capable of giving a good discharge to the bill." In support of this he cites in note 3 to Sec. 326a, *Roberts* v. *Tucker*, 16 Ad. & El., N. S., 578; *Keymer* v. *Laurie*, 18 L. J., Q. B., 218; *Foster* v. *Clements*, 2 Camp., 17, and in addition thereto, Thompson, Chitty, Parsons, Byles, and Edwards on Bills.

Of the text-books cited, Edwards, as we have already seen, takes a different view, while the others refer to the same cases that Mr. Daniel does, as far as they were extant at the time of publication, their text adding nothing thereto germane to the point under discussion.

Having already extended this opinion beyond

what is deemed necessary by the writer, we will undertake to go into but one of the English cases referred to, although they have all been considered. *Roberts* v. *Tucker*, 16 Ad. & El., 578, was where the banker paid an acceptance of the Pelican Life Insurance Company, payable at such banker's, upon a forged endorsement. This payment was debited to the Company on its pass-book, and returned to it by the banker, and the company credited its banker on its books.

Subsequently the company was compelled to pay the amount thereof to the true owner of the acceptance, and thereupon brought this suit against the banker.

The first count in plaintiff's declaration alleged that in consideration of certain money, loaned by it to the defendant banker, and of the agreement to retain and employ the defendant as the banker of plaintiff, the defendant undertook, and promised the company, to the extent of money so lent, to *pay* to the *lawful holders thereof* all such *bills of exchange* as should be accepted by the company, payable at the banker's house, and that not regarding, etc., the defendant had charged plaintiff with an acceptance that had been paid to persons not legally authorized to receive payment and give an acquitance, etc.

The second count was for money loaned, account stated, etc.

The contest was whether the course of dealing between the bank and its customer, creating the

obligation of the banker to pay his customer's acceptances made payable at the place of business of the banker, rendered the latter liable if he paid same upon a forged endorsement, it being conceded that the act of acceptance was a guaranty of the genuineness of the drawer's signature.

The Court decided that the banker's authority to pay was limited to the payment of genuine endorsements. The Court adding that "if bankers wish to avoid the responsibility of deciding on the genuineness of endorsements, they may require their customers to (domicile) their bills at their own offices, and to honor them by giving a check upon the banker."

. And it was in this connection that Parke, B., used the language that has been made the basis of the announcement by the text writers of the doctrine contended for, the latter losing sight of, as we think, the custom and course of dealing, if not an express agreement, that by reason of the deposit or lending of the funds to the banker, the latter undertook to protect the credit of the customer, under which, if he failed to do so, the banker became liable to an action by his customer for permitting him to be dishonored. See *Marzette* v. *Williams*, 1 Bar. & Ad., 415; *Whitaker* v. *Bank of England*, 1 C. M. & R., 744.

Recognizing the mutuality of the obligation, it was said by Maule, J., in *Robarts* v. *Tucker, supra,* that "It is a hardship on a banker, if he must either pay the bill at once, at the peril of an en-

dorsement proving a forgery, or dishonor the bill, at the risk of an action against him by his customer."

*Foster* v. *Clements*, 2 Camp., cited by Mr. Daniel, and other text-writers, was a case presenting for adjudication the same question presented in *Roberts* v. *Tucker*, differing from it only in the fact that in *Foster r. Clements* the banker had paid the acceptance without funds, and then sued the acceptor, its customer. The acceptor defended upon the ground that the bank had not proven the genuineness of the first indorser's signature.

If we are to engraft upon the law of this State what is said to be the English rule, authorizing the bank to treat the paper made payable at its place of business as tantamount to a check, we should do so not *in part*, as the few American cases relied on do, but as a whole, and carry with it an obligation and duty upon the bank to pay, so that upon a failure to do so it must be liable to an action for damages for injury to the credit of its customer. Well might the banks pray to be delivered from their friends if the rule contended for is to be established in this State with all its attendant uncertainties and dangerous liabilities.

Without referring further to the cases cited in the text-books, they may be classed as resting either on custom well established or course of dealing between the parties thereto, or to paper

owned and held by the bank at maturity, where the principle of set-off has been applied.

Without further discussion we hold on this branch of the case the decree of the Chancellor was erroneous, and should be reversed.

Of course it is needless to add that there is nothing to prevent any depositor from making such agreement with his bank as to the protection of his paper. We merely hold that in the absence of an understanding the bank pays at its peril.

One other question remains to be disposed of. For the defendant it is urged that if it be held that the bank had no authority to pay the note, then they ask to be permitted to rely upon such payment as a set-off against complainant's demand, and the note is filed with the answer, showing the indorsements as given in the opening statement of this opinion. The answer is asked to be taken as a cross-bill, but no process is issued.

Without determining whether this matter could or could not be made in answer merely, without cross-bill, it is sufficient to say that in whatever form presented it would be unavailing to the defendant under the proof in this case, which shows that by reason of such unauthorized payment, and the failure of the bank to notify the complainant thereof, the latter had a settlement with J. D. Carter & Co., the parties primarily liable, as between themselves and complainant, subsequent to

such payment, and in ignorance thereof, wherein complainant allowed Carter & Co. credit for the amount of said note, upon the assumption that they had, in accordance with their contract, paid the same. In consequence of all of which, together with the subsequent insolvency and removal from the State of Carter & Co., before any knowledge that his deposits had been applied, the complainant has lost recourse over on parties primarily liable thereon. So that to allow the set-off would be to cast upon complainant the loss resulting from the unauthorized act of the defendant.

Under the facts of this case the complainant's equity is superior to any right of set-off which the defendant might otherwise have had.

Let the decree be reversed and judgment here for the complainant, with interest and costs.

Judge Lurton dissents from the foregoing.