BINGHAMPTON PHARMACY *et al. v.* FIRST NATIONAL
BANK.

(*Jackson.*   April Term, 1915.)

**BILLS AND NOTES.**   Presentment for payment.   Effect of non-
presentation.

Negotiable Instruments Act (Acts 1899, ch. 94) sec. 87, provides
that an instrument payable at a bank is equivalent to an order
to the bank to pay it for the account of the principal debtor
thereon.   Section 70 provides that presentment for payment is
not necessary to charge the person primarily liable, but that
if the instrument is by its terms payable at a stated place
and he is able and willing to pay it there at maturity, it is
equivalent to a tender of payment.   The makers of a note, at
its maturity, had sufficient funds in the bank where it was pay-
able to pay it, but it was not presented by the holder, and the
bank subsequently failed. *Held*, that the makers were not dis-
charged, as by the terms of the instrument they were absolutely
required to pay it, and were therefore primarily liable and not
in the same position as the maker of a check who is only sec-
ondarily liable, and the obligation of the maker of a note is
not a conditional promise to pay only at a specified place, but
is a promise to pay generally, even though a place of payment
is named.

Acts cited and construed:   Acts 1899, secs. 186, 87, 70, 61.

Cases cited and approved:   Adams v. Hackensack Improvement
Commission, 44 N. J. Law, 638; Wood v. Saving Co., 41 Ill.,
267; Ward v. Smith, 7 Wall., 447; Gas Co. v. Pinkerton, 95 Pa.,
62; Rowe v. Young, 2 B. & B., 165; Grissom v. Bank, 87 Tenn.,
350.

Case cited and disapproved:   Lazier v. Horan, 55 Iowa, 75.

Case cited and distinguished:   Sebag v. Abithol, 4 M. & S., 462;
Turner v. Hayden, 4 B. & C., 1.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—H. W. LAUGHLIN, Judge.

FRANK S. ELGIN, for plaintiff.

A. H. MURRAY, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

The defendants below, the Binghampton Pharmacy and Kilpatrick Bros., W. A. Kilpatrick and L. H. Kilpatrick, executed a note payable to the order of "ourselves," which they indorsed in blank and discounted at the Chickasaw Bank & Trust Company. The note was due December 29, 1912, and was payable at the said Chickasaw Bank & Trust Company.

Prior to its maturity this note was rediscounted by the Chickasaw Bank & Trust Company at the First National Bank of Memphis. It was not presented for payment at the Chickasaw Bank & Trust Company when it matured. It is contended by the makers that on the day of its maturity and for several days thereafter there was a sufficient amount to their credit in

the Chickasaw Bank & Trust Company to have paid the note.

As above stated, the note matured on December 29, 1912.   On January 7, 1913, the Chickasaw Bank & Trust Company failed.

Later the First National Bank demanded payment of the note from its makers, which. they declined, on the ground that they had sufficient funds on deposit in the failed bank to meet the note at its maturity, and it is insisted in behalf of the makers that they are discharged from liability on the note on account. of the omission of the First National Bank to present it for payment at the Chickasaw Bank & Trust Company, where the note was made payable, when it fell due.

The lower courts rendered judgment in favor of the First National Bank, and the makers of the note have filed a petition for writ of *certiorari*.

The defense is based on section 87 of the Negotiable Instruments Act (chapter 94 of the Tennessee Acts of 1899), as follows:

"Instrument Payable at Bank Equivalent to What. Where the instrument is made payable at a bank, it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon."

It is contended that under the provisions of the section quoted it became the duty of the holder of this note to present it for payment at the bank, where it was payable upon maturity, and that for neglect of this duty the holder must respond to the makers for the

damage suffered by them in consequence of this neglect of duty.

The argument is that section 87 of the Act of 1899, making any instrument payable at a bank, the equivalent of an order on the bank, puts upon the holder of a note payable at a bank the same duties as rest upon the holder of an ordinary check. Quite a plausible brief is offered in support of this contention, to which we might assent, were it not for section 70 of the Act of 1899, which contains this language:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place and he is able and willing to pay it there at maturity, then such ability and willingness are equivalent to a tender of payment upon his part."

The difference between the drawer of a check and the maker of a note is that the latter is primarily liable on the instrument, while the former is not. The maker of a note "by the terms of the instrument is absolutely required to pay the same." That is to say, he is primarily liable on the instrument. Section 192. The drawer of a check or bill of exchange is not primarily liable, but he engages that if the instrument be dishonored he will pay the amount thereof to the holder or subsequent indorser, who may be compelled to pay it. Section 61.

The provisions of section 70 therefore, which we have quoted above, do not apply to the drawer of a

check or bill of exchange, while they do apply to the maker of a note.

By section 186 of the Acts of 1899, it is made the duty of the holder of a check to present the same for payment "within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

There is therefore an absolute duty resting upon the holder of a check to present the instrument for payment at the place where it is payable, within a reasonable time. If he breaches this duty, the drawer is discharged from liability to the extent he is damaged by the breach.

As between him and the maker of a note, no such duty rests upon the holder of a note with respect to presentment. By the terms of the act (section 70) presentment is not necessary to charge the person primarily liable on the instrument.

The obligation of the maker of a note is not a conditional promise to pay only at a specified place, but is a promise to pay generally, even though a place of payment is named.

It was held formerly by the court of king's bench in England, that an acceptance payable at a particular place was not a conditional contract, and the question twice arose in that court as to whether the acceptor of a bill, payable at a banker's was released by the neglect of the holder to present the bill at the banker's, where the acceptor had funds at the maturity of the

bill—the banker afterwards having failed. Speaking on this subject, Lord Ellenborough said:

"Whether my neglect to call at a house where a man informs me that I may get money amounts to laches depends upon whether I am obliged to call there. This acceptance, though it might be an authority to the bankers to pay the bill, being payable at their house, is not in express terms an order upon them to pay, as was the case of *Bishop* v. *Chitty,* where the language of the acceptance was immediately that of a check upon the bankers. I confess I am unable to see any laches in the defendant upon either ground." *Sebag* v. *Abithol,* 4 M. & S., 462, 105 English Reprint, 905.

The same question came up in a later case in the court of King's Bench, and the court there said:

"The law did not oblige this plaintiff to present the bills at Marsh & Company. We cannot therefore say that he has been guilty of laches because he omitted to do so." *Turner* v. *Hayden,* 4 B. & C., 107 Eng. Reprint, 759.

The holding of the court of King's Bench in the two cases above referred to has been followed in a number of American cases. *Adams* v. *Hackensack Improvement Commission,* 44 N. J. Law, 638, 43 Am. Rep., 406; *Wood* v. *Merchants' Saving Co.,* 41 Ill., 267, 567; *Ward* v. *Smith,* 7 Wall., 447, 19 L. Ed., 207; *Williamsport Gas Company* v. *Pinkerton,* 95 Pa., 62.

There was some confusion in the English cases by reason of the fact that the court of common pleas, and finally the house of lords in *Rowe* v. *Young,* 2 B. & B.,

165, held that an acceptance payable at a particular place was a conditional contract. Under such a holding, presentment at the appointed place was necessary to charge the maker. Afterwards, however, by chapter 78 of 1 and 2 George IV, parliament enacted that an acceptance payable at the house of a banker or other place should be deemed a general acceptance, unless the words "and not otherwise or elsewhere" were added. See *Grissom* v. *Bank,* 87 Tenn., 350, 10 S. W., 774, 3 L. R. A., 273, 10 Am. St. Rep., 669.

We think the reasoning of Lord Ellenborough in *Sebag* v. *Abithol,* supra, is conclusive of the rights of the parties hereto, in view of the *status* of these parties, as fixed by the negotiable instruments law.

Presentment for payment is not necessary to charge the maker of a note. No duty to one primarily liable on a note is breached by a failure to present the instrument for payment. Such an omission is not laches, and affords the maker no ground for complaint. By the very terms of the statute, the holder of a note is relieved of any such obligation in so far as the maker is concerned.

The duty of the holder of a note toward the maker cannot be assimilated to the duty of the holder of a check toward the drawer. In the first instance, the maker is primarily liable; in the latter, the drawer is only liable after dishonor. And again, while the statute excuses presentment of the instrument as to the maker of a note, presentment is required within

a reasonable time in the case of a check at the peril of discharging the drawer.

We think that section 87, declaring an instrument payable at a bank the equivalent of an order on the bank, was only intended to settle the vexed question of the bank's right, without specific authority, to pay such an instrument and charge same to the account of the principal debtor. Prior to the Act of 1899, in Tennessee and elsewhere, the fact that a note was made payable at a bank did not, without more, confer authority upon the bank to pay the note, when presented there at maturity by the holder, out of funds standing on deposit to the credit of the maker. A contrary rule obtained in many States. See discussion of the case in *Grissom* v. *Bank,* 87 Tenn., 350, 10 S. W., 774, 3 L. R. A., 273, 10 Am. St. Rep., 669.

Section 87 authorizes a bank, at which an instrument is made payable, to pay same for the account of the principal debtor. To that extent all instruments payable at a bank are orders on the bank designated. The language used in this section, however, must not be so expanded as to destroy other provisions of the act.

Our attention has not been called to any decision of the question here determined in a jurisdiction where the negotiable instruments law has been enacted. Prior to the compilation of this law, there were authorities to the contrary. These, however, were considered and rejected by this court in *Grissom* v. *Bank,* 87 Tenn., 350, 10 S. W., 774, 3 L. R. A., 273, 10 Am. St. Rep., 669, in which case the court disapproved *Lazier* v. *Horan,*

Binghampton Pharmacy v. Bank.

55 Iowa, 75, 7 N. W., 457, 39 Am. Rep., 167, founded on Story Prom. Notes, sections 227, 228, and some other decisions. The conclusion we have reached accords with our own previous holdings, and we believe is a correct interpretation of the negotiable instruments law.

The petition for *certiorari* will be denied.