NATIONAL BANK OF NORTH AMERICA OF BOSTON *vs.* ED·
WARD D. BANGS & another.

The responsibility of the drawee, who pays a forged check, for the genuineness of the
drawer's signature, is absolute only in favor of one who has not by his own fault or
negligence contributed to the success of the fraud or to mislead the drawee: and if the
payee took the check, drawn payable to his order, from a stranger or other th.·d person,
without inquiry, although in good faith and for value, and gave it currency and credit
by indorsing it before receiving payment of it, the drawee may recover back the money
paid.

CONTRACT against the members of the firm of E. D. & G. W.
Bangs & Company, to recover back money paid by the plaintiffs
on a forged check ; submitted to the judgment of the court on
these facts agreed :

" The defendants, on September 21, 1869, took of some person
(whom they do not remember, and did not remember when they
were first notified of the alleged forgery, and could not then tell
whether he was a stranger to them or a person known to them)
in good faith and for full value, in payment for gold sold by them
in the usual course of their business, a check payable to their
order, of which the following is a copy :

" $1,308.63.    National Bank of North America.    Boston,
Sept. 21st, 1869.   Pay to the order of E. D. & G. W. Bangs &
Co., Thirteen hundred and eight dollars and sixty-three cents.

" No. 932.                          William D. Bickford."

" On said September 21 the defendants deposited this check,
with others, and with their other moneys, in the Maverick Na-
tional Bank of Boston, where they kept their deposits ; and
before depositing it, for the purpose of enabling the Maverick
National Bank to collect the check from the National Bank of
North America, and in accordance with the usage of depositors
of checks payable to order, they indorsed it in blank by writing
on the back of it 'E. D. & G. W. Bangs & Co.'   The Maverick
National Bank the next day presented the check at the clearing-
house, when it was allowed and paid to the Maverick National
Bank by the National Bank of North America in the usual man-
ner of settling the daily balances of banks at the clearing-house.

" The Maverick National Bank, on the day of deposit, credited the defendants with the amount of the check in its account with them ; and the National Bank of North America on September 22 debited William D. Bickford, in whose name the check purported to have been drawn, and who was a customer of and a depositor in the National Bank of North America, and had funds on deposit there, with the amount of the check. The check was retained by the National Bank of North America until the ˜st or 2d of October 1869, when it was sent with other checks, by the National Bank of North America, to William D. Bickford, with the monthly statement of his account, according to the usage of banks. Bickford, after examining the checks, pronounced this a forgery, and on the 4th of October informed the bank of it ; and on the same day the defendants were notified by the National Bank of North America that the check was forged, which was the first intimation or suspicion they had that the check was forged. For the purposes of the hearing on this statement of facts, it is admitted that the check was a forgery."

Both banks were members of the Boston Clearing-House Association at the time of these transactions, and the constitution and by-laws of that association during the time were made a part of the statement, so far as they should be found material and competent. The substance of the rules of the clearing-house, so far as they are material, appears in the opinion.

" It was the usage for each bank belonging to the Clearing-House Association, each morning, at ten o'clock, to have at the clearing-house, for the purpose of effecting settlements with the other banks, all the checks and other demands, such as bills, &c., it had received against all the other banks during the preceding day ; making them up into separate bundles for each bank, with a ticket containing the items and aggregate of the contents of each bundle. The settlement was made at the clearing-house upon the footings of these tickets, without regard to the fact whether the contents of the bundle were correctly ticketed, or formed good claims against the bank charged with the contents of the bundle as per ticket ; and in from ten to fifteen minutes past ten o'clock the messenger from each bank was able to receive

and take to his bank all the claims of the other banks against it. On the return of the messenger to his bank, the messenger deliv-ers to the paying teller the various bundles of demands against the bank ; and it was the usage for the paying teller, or some other officer of the bank charged with that duty, to immediately proceed to open and examine the contents of these bundles, ascer-taining whether the contents of each bundle corresponded with the ticket, and whether each check was properly signed, drawn and indorsed, and whether the drawers of the check had funds depos-ited, sufficient to meet the amounts drawn; and all this is com-pleted before one o'clock of the same day; and all checks not then returned to the banks from which they were received are then charged to the drawers, in the same manner as if they had been presented and paid at the counter of the bank.

" It is agreed that the Bank of North America acted in good faith in the premises."

*H. C. Hutchins & H. H. Currier*, for the plaintiffs.

*W. A. Field*, for the defendants.

WELLS, J. This suit is brought to recover money paid upon a check purporting to be drawn by one Bickford upon the plain-tiff bank, to the order of the defendants, indorsed by them, deposited with their banker, and collected through the clearing-house. The signature of the drawer proved to be a forgery. As the discovery of the forgery was not made in time to enable the plaintiff to return the check, as of absolute right, under the rules of the clearing-house, we think the case must stand as if the pay-ment had been made directly at the plaintiff's counter, in the ordinary mode.

The right of return, secured by the rules of the clearing-house, is a special provision, in compensation for payment without in-spection. Instead thereof, the rules give opportunity for subse-quent inspection. When that has been had, the special rules cease to govern ; and the rights of the paying bank rest upon the general principles of law. *Boylston National Bank* v. *Richard-son*, 101 Mass. 287. But, in applying those general principles, it was held in *Merchants' National Bank* v. *National Eagle Bank,* 101 Mass. 281, that the drawee of a check who paid it without

inspection, under the provisions of the clearing-house rules, might recover back the money, if there had been no actual laches on the part of the drawee, and no change of position on the part of the holder; notwithstanding " the failure of the bank to return a check by one o'clock" as allowed by the rules. The failure in that case was by accident, and involved no neglect.

In this case, the money was paid to the use of the defendants. In making up and returning the monthly account of its depositor, the forgery was discovered, and made known to the plaintiff, and notice thereof was immediately given to the defendants. In this respect the case shows no laches on the part of the plaintiff, and no change of situation on the part of the defendants, which can defeat a recovery, if any right of recovery ever existed, or could arise from the payment in the manner stated. *Merriam* v. *Wol cott*, 3 Allen, 258. *Canal Bank* v. *Bank of Albany*, 1 Hill, 287.

If the suit were between the bank, or drawee, and a party who took the check in the usual course of business, finding it in circulation, or even by first indorsement from the payee, the loss would fall upon the bank; because, having greater means and opportunity to become familiar with the handwriting of their correspondents or depositors, the law presumes that drawees will know their signatures and be able to detect forgeries. From this presumption arises what is often called an obligation or responsibility on the part of the drawee of a bill or check, which prevents him from recovering back money paid upon it on the ground of a mistake of fact. *Price* v. *Neal*, 3 Burr. 1354. *Levy* v. *Bank of the United States*, 1 Binn. 27. *Bank of St. Albans* v. *Farmers' & Mechanics' Bank*, 10 Verm. 141. But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made. " If the loss can be traced to the fault or negligence of either party, it shall be fixed upon him." *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33, 42. In the absence of actual fault or negligence on the part of the drawee, his constructive fault, in not knowing the signature of the drawer and detecting the forgery, will not preclude his recovery from one who has re-

ceived the money with knowledge of the forgery, or who took the check, under circumstances of suspicion, without proper precautions, or whose conduct has been such as to mislead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud. These exceptions are implied by the very terms in which the general rule is ordinarily stated. The case of *Ellis* v. *Ohio Insurance & Trust Co.* 4 Ohio State, 628, is an express decision to that effect, and contains an able and thorough discussion of the subject. We are aware of no case in which the principle that the drawee is bound to know the signature of the drawer of a bill or check, which he undertakes to pay, has been held to be decisive in favor of a payee of a forged bill or check to which he has himself given credit by his indorsement.

In the present case, the check had not gone into circulation, and could not get into circulation until it was indorsed by the defendants. Their indorsement would certify to the public, that is, to every one who should take it, the genuineness of the drawer's signature. Without it, the check could not properly be paid by the plaintiff. Their indorsement tended to divert the plaintiff from inquiry and scrutiny, as it gave to the check the appearance of a genuine transaction, to the inception of which the defendants were parties. Their names upon the check were apparently inconsistent with any suspicion of a forgery of the drawer's name.

But to the defendants the presentation, by a stranger or third party, of a check purporting to be drawn to their own order, which such third party proposed to negotiate to them for value, was a transaction which should have aroused their suspicions. It ought to have put them upon inquiry for explanations; and if inquiry had been properly made it would have disclosed the fraud and prevented its success. The case finds that they acted in good faith. But that does not exclude such omission of due precautions as to deprive them of the right to throw the loss upon another party who acted in like good faith, and also without fault or want of due care.

It is possible that the defendants may have received the check under circumstances which would exonerate them from the im-

putation of any actual fault or neglect. But the agreed statement fails to disclose any such explanation. A majority of the court are therefore of opinion that the judgment must be for the plaintiff, for the amount of the check and interest from the time it was paid. *Ordered accordingly.*