NATIONAL EXCHANGE BANK *vs.* NATIONAL BANK OF NORTH AMERICA.

SAME *vs.* ELIOT NATIONAL BANK.

SAME *vs.* NATIONAL REVERE BANK.

Suffolk.   Nov. 12, 1880; Nov. 10, 1881. — Jan. 5, 1882.   ALLEN, J., absent.

The rules of an association of banks, organizing a clearing-house for the purpose of effecting exchanges between themselves at one time and place daily and the payment at the same place of the resulting balances, fixed a time before noon for making exchanges at the clearing-house, and a time between noon and one o'clock for paying balances there.  The practice under the rules was for the exchanges and payments to be made according to tickets accompanying vouchers presented for exchange, and not from an examination of the vouchers themselves in detail.  The rules also provided that errors in the exchanges should be adjusted directly between the banks; and that, whenever checks which were not good should be sent through the clearing-house, the banks receiving them should return them to the senders as soon as it should be found that they were not good, " and in no case shall they be retained after one o'clock."  *Held*, in the absence of evidence of a uniform custom, among the banks which were members of the clearing-house, to treat notes the same as checks, that the sending of a note through the clearing-house to a bank at which it was payable, was not a formal demand for immediate payment made during business hours, but was equivalent to leaving the note at the bank for collection from the maker on or before the close of banking hours; and that the payment of such a note at the clearing-house was a provisional payment only, which became complete when the note was paid in the usual and ordinary course of business, and, if not so paid, the payment at the clearing-house was to be treated as a payment made under a mistake of fact, to the same extent and subject to the same right of reclamation, although the note was retained until after one o'clock, as if it had been made without the intervention of the clearing-house.  *Held*, *also*, that even if the bank at which the note was payable had funds of the maker of the note on deposit, the retention of the note until after one o'clock did not amount to payment, in the absence of evidence that the maker had authorized the bank to pay his notes out of his money on deposit.

THREE ACTIONS OF CONTRACT for money had and received. The cases were tried together in the Superior Court, without a jury, before *Putnam*, J., who found for the plaintiff in each case; and reported the cases for the determination of this court. If, as matter of law, upon the facts, which appear in the opinion, the plaintiff was not entitled to recover, judgment was to be entered for the defendants; otherwise, judgment upon the finding. The cases were argued in November 1880, and reargued in November 1881.

*R. D. Smith, (M. M. Weston & F. W. Lewis,* with him,) for the defendants.

*J. D. Ball & B. L. M. Tower,* for the plaintiff.

ENDICOTT, J.   A note entitled to grace is payable on demand at any reasonable time and place on the last day of grace, and, if not paid, an action may be brought forthwith against the maker.   But if no such demand is made, the maker has the whole day in which to make payment.   *Gordon* v. *Parmelee,* 15 Gray, 413.   *Estes* v. *Tower,* 102 Mass. 65.   *Pierce* v. *Cate,* 12 Cush. 190.   When a note is made payable at a bank, the contract is that it shall be paid at some time during the banking hours of the bank, and a demand for payment may be made at any time during those hours.   If no demand is made, the maker of the note is not in default until the close of business at the bank on that day.   *Church* v. *Clark,* 21 Pick. 310.   *Clark* v. *Eldridge,* 13 Met. 96.   *United States Bank* v. *Carneal,* 2 Pet. 543, 549.   *Staples* v. *Franklin Bank,* 1 Met. 43, 50, 54, 56.

If a formal demand is made, during banking hours, by the holder of the note, at the bank where it is payable, and there are then no funds, it is the duty of the bank to say there are no funds; and there is then a breach of the contract on the part of the maker, and notice thereof would bind the indorsers.   There is no necessity for a personal demand on the maker elsewhere, for he has made it payable at the bank, and the demand may be made there.   But if no such demand is made, and the note is only sent or placed in the bank for collection, then the maker has till the close of business hours to make payment.

No formal demand was made on the plaintiff for the payment of the notes respectively upon which these suits are brought; and the question is, whether the course of business adopted by these banks through the clearing-house is equivalent to a formal demand at the bank for the payment of the notes forthwith, or whether it merely amounts to a depositing of the notes with the bank at which they are payable for collection.   We are clearly of opinion that, in this case, the sending the notes to the plaintiff through the clearing-house was not a formal demand for immediate payment made during business hours, but was equivalent to leaving them at the bank for collection from the maker on or before the close of banking hours.

The object of the Boston clearing-house association, of which all these banks are members, is to effect at one time and place the daily exchanges between the several banks, and the payment of the balances resulting from such exchanges. At the hour of ten in the morning the exchanges are made, and a later time in the same day is appointed for the receipt and payment of balances by the creditor and debtor banks. Where a balance is against a bank, it must be paid into the clearing-house at a quarter past twelve of the same day, and where the balance is in its favor, it is entitled to receive the same from the clearing-house after half-past one of the same day.

The packages received by the messenger of each bank from the other banks at the clearing-house are immediately taken back to his bank without examination, and disclose the fact whether his bank is entitled to receive, or must pay, a balance to the clearing-house. The settlements are made, not from any examination in detail of the vouchers presented, but from memoranda and tickets accompanying them. Any mistakes which result from this mode of settlement cannot be adjusted at the clearing-house, but must be adjusted directly by the parties thereto. Under this arrangement, the payments required at the clearing-house are only provisional, and may be afterwards corrected and adjusted between the parties, if a debtor bank has paid to a creditor bank more than the creditor bank is entitled to receive.

One of the rules of the association is, that "whenever checks are sent through the clearing-house, which are not good, they shall be returned by the banks receiving the same to the banks from which they are received, as soon as it shall be found that said checks are not good, and in no case shall they be retained after one o'clock." In was held in *Merchants' National Bank* v. *National Eagle Bank*, 101 Mass. 281, that the payment of a check through the clearing-house was provisional until one o'clock, to become complete only if the check was retained after that hour; and that, if by any mistake of fact a check so paid, but not good, was retained until after one o'clock, the payment of it was to be treated as a payment under a mistake of fact, to the same extent, and subject to the same right of reclamation, as if it had been made without the intervention of the clearing-house.

There is no rule of the clearing-house in regard to the return of notes payable at a bank, which may be sent through the clearing-house to a bank at which they are payable, and the amount of which is included in its settlement with the clearing-house. It does not appear that it is the uniform custom or usage, among the Boston banks which are members of the clearing-house, to treat notes the same as checks; and to send them for collection through the clearing-house, and, if not paid, to return them to the sending bank before one o'clock of the same day.

The presiding judge has found specially, "that a large number of the banks are in the habit of sending their notes with their checks through the clearing-house for collection, and of returning them, if not paid, to the sending bank before one o'clock; but," he adds, "I do not find such to be the uniform and invariable custom. The plaintiff and defendant banks were so in the habit of sending and receiving notes through the clearing-house, and they generally returned them, if not paid, to the sending bank, before one o'clock, but this rule was not invariable. Some of the banks decline thus to send or receive notes through the clearing-house; and some of those who do thus send and receive them there, and among them the plaintiff bank, take back the notes, if not paid, after one o'clock."

These findings are only important as showing that it is not within the rules or course of business at the clearing-house, binding among the associated banks, that notes payable at a bank shall be charged to that particular bank on a settlement at the clearing-house; but that it is simply a method, adopted by such banks as may see fit so to do, for placing the note in the bank where it is payable, to be collected in the usual and ordinary course of business. And the payment of such a note made at the clearing-house is a provisional payment, and becomes complete when the note is paid in the usual and ordinary course of business; and, if not so paid, the payment at the clearing-house is to be treated as a payment made under a mistake of fact, to the same extent, and subject to the same right of reclamation, as if it had been made without the intervention of the clearing-house. It may also be noticed, that a bank is under no obligation whatever to pay a note made payable at its counter, unless

the maker has placed funds there for that purpose; and it has not the same means of ascertaining immediately whether it will be paid by the maker that it has of ascertaining whether a check is good. The rule as to checks, therefore, has no application to the payment of notes.

The sending of such a note through the clearing house, not accompanied by any special demand of payment, can give no greater rights to the bank that sends it, than if the note had been left at the bank where payable, without any demand for payment or any instructions in relation thereto. In such a case, the maker would have during business hours to pay the note, and the bank would be in no default if it returned the note as soon as it became certain that it would not be paid.

In the case at bar, each of the defendants sent through the clearing-house a note of Carrick, Calvert & Co., payable at the plaintiff bank. The amounts due upon the several notes were included in the plaintiff's settlement with the clearing-house that day, and the notes were received by the plaintiff about eleven o'clock. About one quarter before two o'clock, the notes not being paid, the plaintiff sent to Carrick, Calvert & Co.'s place of business, and ascertained that they would not be paid. A messenger was sent, before two o'clock, with the notes to each of the defendant banks, reached each bank before it had closed, and demanded in each case the amount which the plaintiff had paid through the clearing-house, and tendered back the note; but payment was refused by the defendant banks, on the ground that the notes were returned too late, that they should have been returned before one o'clock. We fail to find any laches on the part of the plaintiff; and, on the facts presented, no injury resulted to the defendants because the notes were not returned earlier. Carrick, Calvert & Co. had money on deposit in the plaintiff bank that day, but not enough to pay all their notes made payable that day at its counter. And the case expressly finds that Carrick, Calvert & Co. were in the habit of paying their notes at the plaintiff bank between one and two o'clock, by giving their checks for the same, either on the plaintiff bank or on some bank where they kept a deposit; and that they never had given any authority to the plaintiff to pay their notes out of their funds on deposit. Such authority cannot be

implied merely from the fact that they made their notes payable there. *Wood* v. *Merchants' Saving, Loan & Trust Co.* 41 Ill. 267.

As matter of law, on the facts stated in the report, the presiding judge rightly ruled, that the plaintiff was entitled to recover in the several actions against the defendants respectively. In each case there must be *Judgment for the plaintiff.*