ATLAS NATIONAL BANK *vs.* NATIONAL EXCHANGE BANK.

Suffolk.   March 21, 1900. — June 11, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Promissory Note — National Bank — Clearing-house Settlement —*
*Custom — Finding.*

In an action by one national bank against another, both being members of a clearing-house association, to recover the amount of a promissory note included in the account in the clearing-house of the defendant bank against the plaintiff bank, at which it was payable, and returned by the plaintiff to the defendant after the close of business hours, if there is evidence of a universal custom among the members of the association, which choose to clear their notes through the clearing-house in place of presenting them for payment at the banks where they are payable, that if notes included in the clearing-house settlement which turn out not to be good are not returned before the time of closing of the paying bank, the conditional payment becomes absolute, a finding for the plaintiff is not warranted.

CONTRACT, for money had and received.   Trial in the Superior Court, without a jury, before *Hopkins,* J., who found for the plaintiff; and reported the case for the determination of this court.   The facts appear in the opinion.

*J. P. Sweeney,* for the defendant.

*A. Hemenway,* (*C. B. Barnes, Jr.* with him,) for the plaintiff.

LORING, J.   This case comes up upon a report of the Justice of the Superior Court who tried the case without a jury.   The report sets forth six rulings requested by the defendant, all of which were denied by the court, and two rulings made by the court.   The court found for the plaintiff, and the report concludes as follows : " If, as matter of law on the foregoing facts, the plaintiff is not entitled to recover, judgment is to be entered for the defendant ; otherwise judgment is to be entered upon the above finding for the plaintiff."

We think that there may have been a mistake in the terms of the report, stating what questions of law were reserved for the consideration of this court.   As the report is drawn, the only question which is open for consideration here is whether, as a matter of law, on the facts stated in the report, the de-

fendant is entitled to a verdict.  If that were the only question which it was intended should be open in this court, there was no reason for inserting the two rulings made by the court and the last five of the six requests for rulings made by the defendant.  The insertion in the report of these rulings and these requests for rulings, and the fact that they have been discussed by counsel at the bar, has led us to think that the concluding paragraph of the report may have been drawn as it was through inadvertence.  We are of opinion that the two rulings made by the court were wrong.

The action was brought to recover the amount of a promissory note for $5,000 made by the Boston Woven Hose and Rubber Company, payable to its own order, indorsed by it, by the Lawrence National Bank, and by the defendant bank, and payable at the plaintiff bank on June 16, 1898.  It appears from the testimony set forth in the report that the note was included in the account of the defendant bank against the plaintiff bank in the clearing-house on that day, and the amount of it was charged to the Boston Woven Hose and Rubber Company on the books of the plaintiff bank in red ink, as all clearing-house notes are charged, at about eleven o'clock; at the same time the defendant bank was credited with this amount among other items in its clearing-house account.  About twelve o'clock the paying teller of the plaintiff bank called up by telephone the treasurer of the Boston Woven Hose and Rubber Company, the maker of the note, and told him that the note was in the bank, to which the treasurer said, " I will attend to that later."  At ten minutes before one o'clock the messenger of the plaintiff bank, at the request of the paying teller of that bank, called up the defendant bank upon the telephone and asked for " time " on the note of the Boston Woven Hose Company.  He was asked if the note was likely to be paid, answered " Very likely," and received the reply " All right.".  At a few minutes before two o'clock the paying teller of the plaintiff bank called to the attention of the cashier of that bank the fact that this note had not been paid ; the cashier thereupon went to the telephone and tried unsuccessfully to speak with some officer of the Boston Woven Hose and Rubber Company who knew about the bank account; he was told that he would have to speak

with one Bryant, the assistant treasurer, and that Bryant would be back shortly. The cashier of the plaintiff bank then went to lunch, getting back at about ten minutes before three o'clock. Upon returning from lunch, the cashier called up Bryant, the assistant treasurer, on the telephone, and asked him what he was going to do with the note in question; Bryant then informed him that the Boston Woven Hose and Rubber Company had made an assignment. The cashier then said to Bryant that it was "rather rough treatment," whereupon Bryant said, " You don't mean to say you have paid it! " And the cashier replied, "Yes, we have paid it; " to which Bryant replied, that in the previous January he had told him "not to pay any notes unless you had received a check to cover the notes." The cashier further testified, in answer to the question whether he remembered that he then stated to Bryant that he did not want to get the Boston Woven Hose and Rubber Company into trouble, and that that was the reason he paid the note, and that he wanted to accommodate them to that extent, " I think I told him that we did it to accommodate them."

After this conversation the cashier directed the bookkeeper to cross out the charge of $5,000 against the Boston Woven Hose Company and the credit in favor of the defendant bank of the same amount, and sent the messenger of the bank with the note to the defendant bank to tender it back and demand the $5,000 credited by reason of it in the clearing-house. This was refused, and the present action was brought.

By the rules of the clearing-house, errors in any item in the clearing-house account, or any claims arising from a payment in that account not being good, were to be adjusted directly between the parties to that account; and in case the item which was not good consisted of a check, it was to be returned not later than one o'clock. There was no rule of the clearing-house as to the time when items other than checks should be returned, which were included in the clearing-house settlement, and turned out not to be good. There was evidence that there was a custom among banks, which cleared notes through the clearing-house, fixing the time, within which the conditional payment of a note included in a clearing-house settlement, could be avoided

by the return of the note, or, in other words, when the conditional payment of such a note became absolute. As we understand the testimony, that there was such a custom was uncontradicted. Whether we have interpreted the report rightly in that connection may, perhaps, be open to question. The assistant manager of the clearing-house association testified that " There is a custom to return notes after one o'clock up to the time of closing of the bank; that would be up to two o'clock in case of the Atlas. I don't know of any established custom that extends the time for returning notes beyond two o'clock. I don't know of any custom that permits the return of a note after two o'clock. . . . There is a custom about charging notes through the clearing-house ; I think it might be said to be nearly universal. But there are cases where they do not receive notes through clearing, among banks that are members of the clearing."

We understand this testimony to mean that the custom of banks, which are members of the clearing-house association, to clear notes held by them through the clearing-house, in place of presenting them for payment at the bank where they are payable, is not universal; but that the custom among those members of the association, which choose to clear their notes through the clearing-house in place of presenting them is universal, and that the custom is that if the notes are not returned before the time of closing of the bank, in case of the plaintiff two o'clock, the conditional payment becomes absolute.

With the single exception of the testimony of the cashier of the plaintiff bank, all the witnesses concurred in their testimony that under no circumstances did the time for returning a note continue beyond two o'clock or the business hours of the bank at which the note was payable. Some witnesses testified that the time was two o'clock, without reference to the business hours either of the bank at which the note was payable or the bank which held the note; others testified that it was the close of business hours of the paying bank; others testified that it was one o'clock, unless " time " was asked for, and if " time " was asked for, it was two o'clock.

In the case at bar, there was on the testimony no question but that the business hours of the plaintiff bank closed at two

o'clock; we do not regard the testimony of the cashier of the plaintiff bank that as a matter of courtesy some business was done after two o'clock as evidence that the business hours of that bank continued after that hour.

There was some testimony by the cashier of the plaintiff bank which was in conflict with that of the other witnesses. I refer to his testimony that if " time " was asked for and granted on a note which had gone through the clearing-house, the time for the return of that note was fixed at the time when the books of the paying bank were actually closed and the safe locked; that there was no regular time for the return of the note in such a case; and that it was the duty of the paying bank to return the note when it was found that it was not good. All the other witnesses testified that when " time " was granted, it meant until two o'clock; some of them testified that " time " was asked for because, unless " time " was granted, the time for the return of the note was one o'clock; and others testified that there was so much doubt as to whether, in the absence of the granting of " time," the time was one or two o'clock, that it was usual to get time, if the note was not returned by one o'clock.

The presiding judge made the following findings and rulings: " The association has not in writing established any rule regulating the return of ' other items,' including promissory notes, or limiting the time in which they may be returned. I find that it has not otherwise established such a rule. I find also that such a rule has not been established by a universal, uniform, and general custom, and rule that a custom, if one exists, to return such notes before the end of the business hours of the receiving bank would be bad, as being in derogation of law and of the rights of the parties, to whom the receiving bank would owe certain duties by reason of having the notes at its place of business for payment on the day when they became due."

The reason given in the report by the presiding justice for these rulings was: " The bank receiving the note for collection owes to the person depositing the note with it the duty of holding it and having it ready for delivery upon payment during the entire business day, and to the maker of the

note the duty of thus holding it for delivery to him during the entire time in which he has to pay it, that is, until the expiration of the last moment of the last hour of the business day at the bank at which it is made payable. The association has not in its printed rules undertaken to hold the receiving bank to a return of the note to the delivering bank before its dishonor, or make it incumbent upon such bank to violate its legal duty to its customers. It could not establish such a rule by agreement between its members, oral or written, or by a practice or usage, however general and uniform, and has in no wise attempted to do so. I rule, as matter of law, that the receiving plaintiff bank was under no legal obligation to return the notes in suit * to the respective delivering defendant banks until their dishonor at the expiration of the last moment of the hour expiring at two of the clock in the afternoon of the sixteenth day of June, the day upon which, it is agreed, both notes became due."

We are of opinion that these rulings were wrong.

It would be entirely proper for banks, which are members of a clearing-house association, to agree that a promissory note, included in the clearing-house settlement, and in that way conditionally paid without inspection, shall be returned as soon as it is found out that it is not a good item in that account, and to limit the time within which it can be returned, and to provide that if it is not returned within the time so fixed by the clearing-house, the conditional payment made without inspection shall be avoided and the parties left in the same position that they would have been in had the note not gone through the clearing-house and no conditional payment had been made. A promissory note may not be a good item in the clearing-house settlement, either because the account to the credit of the maker at the bank, where it is payable, is not large enough to pay it, or because the bank has no right to charge notes made by the depositor who was the maker. of the note in question to his account without a check being drawn therefor or specific instructions being given to that effect, as was the

---

* This case was tried in connection with another action by the same plaintiff against the Merchants' National Bank involving a similar transaction with reference to a note made by the Western Rubber Company.

case in *National Exchange Bank* v. *National Bank of North America*, 132 Mass. 147.

If the members of a clearing-house association should provide in their rules that such notes must be returned by twelve o'clock, for example, and, if not so returned, the conditional payment would become absolute, the bank holding the note for collection would have two hours in which to present the note for payment. Such an article in the rules of the association of a clearing-house would not violate the rights of the holders of the note, or the duties which either of the banks owed to him. A bank holding a note for collection for account of one of its depositors does not violate the duty it owes to the depositor if (1) it presents the note for payment at any time during business hours, and, on payment being refused, protests it, as it may do for non-payment; or if (2) it leaves the note for collection at the bank at which it is payable without making a demand for payment. The duty imposed by law upon the receiving bank does not require that either of these acts should be done at any particular moment during the banking hours of the day on which the note is payable. Moreover, the rules of the clearing-house might provide that the paying bank, on discovering that the note was not a good item in the account, should be entitled to repayment of the amount thereof, on giving written notice to the bank in whose clearing-house account the note was included, and should then keep the note as a note left for collection without presentment for payment.

The ruling of the presiding justice is evidently based upon the decision in *National Exchange Bank* v. *National Bank of North America*, 132 Mass. 147. In that case the bank at which the promissory note was payable had no right to pay the note in question without a check from the maker of it; there was no request for time made by the bank at which the note was payable; the note was held until ten minutes before two o'clock, at which hour it was sent to the bank which held it for collection, after the bank at which it was payable had ascertained from the maker that the note would not be paid. The statement of the findings of the presiding justice before whom that case was tried, without a jury, is as follows: " The presiding justice has found specially, 'that a large number of the banks are in the habit of sending

their notes with their checks through the clearing-house for collection, and of returning them, if not paid, to the sending bank before one o'clock; but,' he adds, 'I do not find such to be the uniform and invariable custom. The plaintiff and defendant banks were so in the habit of sending and receiving notes through the clearing-house, and they generally returned them, if not paid, to the sending bank, before one o'clock, but this rule was not invariable. Some of the banks decline thus to send or receive notes through the clearing-house; and some of those who do thus send and receive them there, and among them the plaintiff bank, take back the notes, if not paid, after one o'clock.' " See *National Exchange Bank* v. *National Bank of North America,* 132 Mass. 147, 150. The case came up on a report in which these facts were set forth, and which provided that the plaintiff should recover unless as matter of law the plaintiff was not entitled to recover. This court held that the plaintiff was entitled to recover, and Endicott, J., in delivering the opinion of the court, stated that it was not within the course of business at the clearing-house that notes payable at a bank should be charged to that bank on the clearing-house settlement; that sending the notes through the clearing-house is merely a method for placing the note in the bank where it is payable to be collected in the usual course of business, and that the payment of such a note made in the clearing-house settlement " is to be treated as a payment made under a mistake of fact, to the same extent, and subject to the same right of reclamation, as if it had been made without the intervention of the clearing-house." p. 150.

The conclusion reached in that case on the facts there found by the presiding justice was undoubtedly correct, and the statement of the way in which the conditional payment of a note, made by its being included in a clearing-house settlement, was to be treated was also correct on the facts found. But it cannot fairly be taken to be a statement of the way in which a note included in a clearing-house settlement is to be treated in a case where the evidence as to the effect of including a promissory note in a clearing-house settlement is different from the evidence in that case.

In the case at bar the evidence on that point was different;

there was evidence in this case that the effect of including a promissory note in the clearing-house settlement is very different from what was found to be the effect thereof in *National Exchange Bank* v. *National Bank of North America*, and the way in which the note in question in this case was treated was very different from the way in which the note was treated in that case. In the case at bar, there was evidence that the note was, in fact, charged as conditionally paid on the books of the plaintiff bank; that "time" was asked on the note before one o'clock; that the cashier of the plaintiff bank tried to ascertain, just before two o'clock, whether the notes were or were not to be paid, and, failing to find the officer of the corporation which made the note, decided to pay the note to accommodate that corporation; and, in addition, there was evidence that there was a custom to this effect: if a bank which is a member of the clearing-house chooses to send its notes through the clearing-house, the notes are treated as conditionally paid, and if not returned at a fixed hour, that conditional payment becomes absolute; whether the hour fixed is one or two o'clock was left in doubt on the testimony.

In the case at bar there was evidence, apart from the evidence of custom, that it was impliedly agreed between the two banks in question that the note was to be treated as checks were treated, namely, as paid, if not returned, and that the effect of the granting of "time" was to fix the time, at which the conditional payment became absolute, at two o'clock. The fact that the note was sent through the clearing-house, followed by the fact that the plaintiff asked for "time," and that at three o'clock the cashier of the plaintiff bank told the assistant treasurer of the corporation which was the maker of the note that the note had been paid, was evidence on which a jury could have made a finding to that effect. In addition to this, there was evidence that there was a universal custom that if a bank, a member of the clearing-house, included promissory notes in the clearing-house settlement, they were to be treated as paid if not returned at some hour, either one or two o'clock, if "time" was not asked; and if "time" was asked and granted, not later than two. On this point there was conflicting testimony; but though there was a conflict, there was evidence that when "time" is given the conditional payment becomes absolute at two o'clock.

In the case at bar there was no mistake of fact and no evidence of a mistake of fact. If a check included in a clearing-house settlement is not returned within the time allowed, because of a mistake of fact, the paying bank can recover on that ground. *Merchants' National Bank* v. *National Bank of the Commonwealth*, 139 Mass. 513. But in this case there was no mistake of fact, and no recovery can be had on that ground. In spite of that, the presiding justice held that any custom or agreement, such as we have indicated there was evidence of in this case, would be void, that the sending of the note through the clearing-house was to be taken to be nothing more than a method of leaving the note with the paying bank for collection, and for that reason the payment made through the clearing-house could be recovered as a payment made through mistake of fact, though no mistake of fact really existed, and consequently that if the position of the defendant had not changed from that which existed when the note was dishonored by not being paid at two o'clock, the plaintiff could recover.

Under the terms of the report the correctness of these rulings is not before us; but inasmuch as these rulings are set forth at length in the report, we think it may have been the intention of the presiding justice to leave them open for argument. Under these circumstances, we think that the report should be discharged that the defendant may have an opportunity for presenting to the Superior Court a motion for an amendment of the report, or for such other action in the premises as it may be advised.

*So ordered.*