(120 App. Div. 518)

### WILLIAMSBURGH TRUST CO. v. TUM SUDEN.

(Supreme Court, Appellate Division, Second Department.    June 28, 1907.)

BILLS AND NOTES—CHECKS—INDORSEMENT OF FORGED CHECK—LIABILITY.

    Defendant presented to plaintiff trust company several forged checks purporting to be drawn by R. payable to bearer, and bearing the unqualified indorsement of defendant. It appeared that defendant had been in the habit of cashing checks for R., and that the checks in question were cashed in part for a servant in the employ of R., part of their face value being retained by defendant on an indebtedness to him by R. *Held*, that the trust company was entitled to recover the amount of the checks as money paid by mistake.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 1272.]

Appeal from Municipal Court, Borough of Brooklyn, Seventh District.

Action by the Williamsburgh Trust Company against Peter R. Tum Suden. Appeal by plaintiff from a judgment in favor of defendant. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, HOOKER, and RICH, JJ.

Fernando Solinger, for appellant.
Clinton T. Roe, for respondent.

WOODWARD, J. This is an action to recover money paid by mistake—the amount of four certain checks payable to bearer, which were forgeries, purporting to be signed by L. F. Rand, and indorsed by Peter R. Tum Suden. The checks with Tum Suden's single and unqualified indorsement were presented and paid to him by the plaintiff. It was shown at the trial that Tum Suden had been in the habit of cashing checks for Rand, and that the forged checks were cashed, in part, for a maid servant in the employ of Rand; the other part of their face value being retained by Tum Suden for groceries previously furnished to Rand. As the checks were negotiable without indorsement, it is evident that Tum Suden's indorsement would divert the trust company from that careful scrutiny which otherwise it would

have been likely to give them. It was Tum Suden who negotiated the checks and put them into circulation, and, as by his unqualified indorsement he facilitated the forgery, his position is not that of an indorsee who holds a forged check sanctioned by a prior indorsement. If Tum Suden suffered loss or damage by cashing the checks, it is evident that such loss was sustained before the checks were honored by the trust company. I fail to see, therefore, how the trust company when it paid the checks can be held responsible for a loss previously sustained. As there is no proof that the mistake of the trust company has been to the prejudice of the respondent, it is but right that he should refund the money had and received.

The evidence shows that Tum Suden for several months prior to the time of these forgeries had been accustomed to cash checks for Rand. It follows, therefore, that Tum Suden, who had had every opportunity to become acquainted with Rand's signature, has no right to shift the loss resulting from his own fault, oversight, or negligence upon another. On the other hand, it was but natural for the bank to assume that Tum Suden's indorsement warranted the genuineness of the signature. It was Tum Suden who had the first contact with the forger, and who first failed to detect the forgery, and upon him, therefore, must fall the burden of loss. From the foregoing it will appear that the case at bar presents an interesting exception to the case of Price v. Neal, 3 Burr, 1354, which ruled that the bank must bear the loss when it pays a check to which the drawer's name is forged. Such exceptions, however, have long ceased to be unusual.

In National Bank, etc., v. Bangs, 106 Mass. 441, 8 Am. Rep. 349, the court said:

"We are aware of no case in which the principle that the drawee is bound to know the signature of the drawer of a bill or check, which he undertakes to pay, has been held to be decisive in favor of a payee of a forged bill or check to which he himself has given credit by his indorsement."

The same principle should be applied here. Upon the first indorser is the burden of the first precaution, and his negligence or omission will exonerate, as in the present instance, the bank. Had a third party presented the check, already in circulation, for payment, the bank would have been put upon inquiry, and for any negligence in that case it would have been responsible.

In First National Bank of Danvers v. First National Bank of Salem, 151 Mass. 281, 24 N. E. 44, 21 Am. St. Rep. 450, the court uttered a principle of construction which justifies my view:

"The indorsement, which was not necessary to the transfer of the check, was a guaranty of the signature of the drawer, and the plaintiff had a right to believe that the indorser was known to the defendant by proper inquiry."

Judgment should be reversed, and a new trial ordered, costs to abide the event. All concur.