## SOUTH BOSTON TRUST COMPANY *vs.* A. P. LEVIN.

Suffolk.    March 21, 1924. — May 19, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Contract,* Implied.   *Bills and Notes,* No recovery by bank cashing forged check for holder in due course who was not negligent.   *Negligence.*

One who forged a signature upon a check drawn upon a trust company and payable to " cash," delivered it, unindorsed, to a lodging house keeper in payment for lodging and for cash, and the lodging house keeper delivered it still unindorsed to his lessor. The lessor indorsed the check without qualification and, through a bank where he was a depositor, collected it from the bank upon which it was drawn. The forger told the lessor that the signer of the check was his mother and that, as he had no bank account, he had turned over to her large sums of money and had received the check from her. The lessor had no reasonable cause to believe that the transactions were irregular and acted in good faith. Upon proper examination, the bank upon which the check was drawn would have discovered the forgery at the time it was presented for payment. In an action of contract by the bank upon which the check was drawn against the lessor with a declaration in two counts, one count declaring upon the defendant's indorsement and the other seeking a repayment of money paid by the plaintiff through mistake, it was *held,* that

(1) The recovery sought being based upon the invalidity and not upon the validity of the signature of the maker of the check, G. L. c. 107, § 45, was not applicable;

(2) The plaintiff not being a holder in due course, G. L. c. 107, § 89, was not applicable;

(3) Since G. L. c. 107, § 85, relates to an acceptance of a bill of exchange and not to the payment of a check, it was not applicable;

(4) Since G. L. c. 107, § 210, relates to certification and not to payment of a check, it was not applicable;

(5) G. L. c. 107 discloses no provision purporting to control the rights of the parties in the circumstances, and therefore the common law governed in this action;

(6) Under the rule of the common law, which is, in effect, that the drawee of a bill of exchange who pays it to a holder in due course cannot recover back the sum so paid upon discovering that the signature of the drawer is forged, judgment should be entered for the defendant.

CONTRACT for $270 and interest with a declaration in two counts. In the first count the plaintiff alleged that one Denis Joseph Healey made ten checks drawn upon the plaintiff payable to " cash," purporting to be made by one Alice H. Healey but in reality being forgeries; that the checks were transferred to the defendant, who indorsed them and through his bank collected them from the plaintiff; and the plaintiff sought to recover from the defendant as an indorser. Under the second count, the plaintiff sought to recover the money paid to the defendant as being money paid through mistake in the cashing of forged checks of a third party. Writ in the Municipal Court of the City of Boston dated August 4, 1922.

Material evidence, findings and rulings at the trial in the Municipal Court are described in the opinion. There was a finding for the plaintiff and a report to the Appellate Division, who ordered a vacation of the finding and judgment for the defendant. The plaintiff appealed.

*F. W. Falvey,* for the plaintiff.

*G. H. McDermott,* for the defendant.

CROSBY, J. This is an action of contract to recover the amount of ten checks, presented by the defendant to the plaintiff company and cashed by it. The declaration in its final form contained two counts: the first, relying upon the defendant's indorsement; the second, relying upon the payments having been made by reason of mistake of fact. The trial judge found for the plaintiff on the second count; the Appellate Division vacated the finding and entered judgment for the defendant. The case is before this court on the plaintiff's appeal.

The record discloses the following facts: One Denis Healey forged the signature of Alice H. Healey to ten checks drawn upon the plaintiff trust company. At different times

in July, 1922, he negotiated these checks, which were drawn payable to cash, to one Chiplovitch, in payment for lodging and for cash. They were unindorsed by Healey, and Chiplovitch in turn delivered them unindorsed to the defendant, his lessor. The defendant indorsed each check without qualification and deposited all of them in his account in the Exchange Trust Company; they were paid by the plaintiff through the Federal Reserve Bank. It also appears that Healey told Chiplovitch that Alice H. Healey was his sister; that he told the defendant she was his mother, and as he had no bank account, he had turned over to her large sums of money and had received the checks from her. It also appeared that Chiplovitch had no bank account.

The trial judge, in accordance with the defendant's requests, found that he was a holder in due course for value without notice, that he had no reasonable cause to believe the transactions were irregular, and that he acted in good faith. He further found that a proper examination by the plaintiff would have disclosed the forgery at the time the checks were presented for payment. Many requests made by the defendant, with the rulings thereon, are not before this court: some of them were granted without objection; others were waived; and still others were rendered immaterial by subsequent findings of fact, or the general finding. The remainder of the requests adequately raise the issue of the validity of the general finding, in the light of the special findings of fact.

The question arises, Are the rights of the parties to be determined by the provisions of the negotiable instruments act, G. L. c. 107 ? In referring to that act this court has said: " While it does not cover the whole field of negotiable instrument law, it is decisive as to all matters comprehended within its terms." *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 206. See G. L. c. 107, § 22. *Commercial Trust Co.* v. *New England Macaroni Manuf. Co.* 247 Mass. 366. The sections of that chapter in which the rules controlling the present case must be found, if at all, are 18, 45, 85, 89, 160, 208 and 210. By § 45 it is provided, in substance, that a forged or unauthorized signature is wholly inoperative; and

no right to retain the instrument, or to give a discharge therefor, or to enforce payment against any party, can be acquired under such signature unless against a defendant who is precluded from setting up the forgery or want of authority. It is apparent that in the case at bar the plaintiff's claim of recovery is not based upon the validity, but rather upon the invalidity of the signature; this section therefore is not relevant.

By § 89, certain warranties by persons negotiating an instrument without qualified indorsement are enumerated. As these warranties run only to a holder in due course, it cannot be successfully contended that a drawee, who has paid the instrument at or after maturity, is a holder in due course. On the contrary the instrument is thereby discharged. G. L. c. 107, § 142.

By § 85, it is provided, in part, that " The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: 1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument." It is by reason of this section that the defendant contends the negotiable instruments act governs the present case.

Section 208 provides that a check, except where otherwise specified in the act, shall be subject to the provisions relating to bills of exchange, which include § 85. But § 85 relates only to the effects of acceptance; and acceptance cannot be construed to mean payment, or to include payment. Acceptance, as defined in § 18 is, " an acceptance completed by delivery or written notification." This is wholly inconsistent with payment.

By § 210, it is provided that certification of a check by a bank on which it is drawn is equivalent to an acceptance. Certification and payment are radically different transactions.

An examination of the act, which makes no reference to the law as it had previously existed, discloses no provision purporting to control the rights of the parties to a case like the present.

It cannot be successfully contended that it is a necessary implication of § 85 that the drawee of a bill is to be held to

the same admissions when he pays the bill that are expressly provided for when he accepts it. In *First National Bank v. Bank of Cottage Grove*, 59 Ore. 388, it was said, at page 396: " The payment of a bill or check by the drawee amounts to more than an acceptance. The rule, holding that such a payment has all the efficacy of an acceptance, is founded upon the principle that the greater includes the less." We are unable to agree with this statement, as there is no similarity between acceptance and payment: payment discharges the instrument, and no one else is expected to advance anything on the faith of it; acceptance contemplates further circulation, induced by the fact of acceptance. The rule, that the acceptor makes certain admissions which will inure to the benefit of subsequent holders, has no applicability to payment of the instrument where subsequent holders can never exist.

The act is inapplicable for the following reasons: (a) It contains no pertinent express provision; (b) it does not purport to cover all cases and contingencies; (c) there is no analogy between any express provision and the issues of the present case; (d) there is no reasonable possibility of a uniform rule under the present act which follows from the lack of an express provision in the act; (e) and finally, its framers and the legislators who enacted it were undoubtedly aware of the issues, of which the present case is an illustration, and of the conflict of authority at common law upon the question, and could have framed an express provision if they had so desired.

The common law in this Commonwealth is therefore to govern. The rule of *Price v. Neal*, Burr. 1354, is in force. *Dedham National Bank v. Everett National Bank*, 177 Mass. 392. *United States v. Chase National Bank*, 252 U. S. 485. It is, in effect, that the drawee of a bill of exchange who pays it to a holder in due course cannot recover back the sum so paid upon discovering that the signature of the drawer is forged. This exception to the usual rule respecting money paid under a mistake of fact has been explained by Holmes, C.J., in the second case cited above, at pages 395–6; yet, as was said in *First National Bank v. United*

*States National Bank*, 100 Ore. 264, at page 277: " The holder must refund to a drawee who is not guilty of actual fault if the holder was negligent in not making due inquiry concerning the validity of the check before he took it, and if the drawee can be said to have been excused from making inquiry before taking the check because of having had a right to presume that the holder had made such inquiry." *National Bank of North America* v. *Bangs*, 106 Mass. 441. *First National Bank of Danvers* v. *First National Bank of Salem*, 151 Mass. 280. See also *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33. In the Danvers Bank case, *supra*, the trial judge found that the defendant was negligent because of its having cashed a check purported to be signed by a person not a customer of the defendant, and presented by a person not known to the defendant, without more inquiry as to its genuineness. In view of this it was held that some negligence on the plaintiff's part in not sooner ascertaining the forgery, which had not prejudiced the defendant in any way, was no bar to a recovery. In the case of *National Bank of North America* v. *Bangs, supra*, the defendants' negligence, if any, consisted in cashing a check made payable to themselves, there being no evidence of whether it was presented by a stranger or by a person known to them. The case was submitted to the court upon agreed facts which left uncertain, except for the above, the circumstances under which the defendants cashed the checks. On this state of the record, a majority of the court held that the plaintiff could recover. The present case is different. Here the defendant made inquiry of Healey, who was personally known to him, and was told by Healey that he had turned over money to his mother and that the checks were given by her to him. He was found to have been a holder in due course, and, while some kinds of negligence might sustain this action even though inadequate to prevent the defendant from being a holder in due course, there is no evidence of such negligence. The trial court found that the defendant had no reasonable cause to believe the checks irregular. The general finding for the plaintiff was inconsistent with this finding.

The ruling of the Appellate Division was therefore correct. The entry, " Finding vacated, judgment for defendant," is affirmed.

*So ordered.*