THE MECHANICS NATIONAL BANK OF WORCESTER *vs.* WORCESTER COUNTY TRUST COMPANY.

Worcester. September 26, 1960. — December 2, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Bank and Banking. Bills and Notes,* Forged check, Holder of check, Drawee of check. *Forgery. Negligence,* In cashing check, Of drawee of check, Contributory. *Proximate Cause. Mistake. Contract,* Implied.

A bank which paid a check drawn on it on presentation by another bank as holder at the clearing house of which both banks were members and which learned the check was forged nine days after such payment was not barred from recovering the amount of the check from the second bank by reason of provisions of the constitution of the clearing house requiring return of items received in check clearings within a specified short time after receipt. [469–470]

A conclusion in an action that negligence of the defendant, a bank, in cashing a check in a large amount payable to "cash" drawn on the

plaintiff, another bank, and bearing forged signatures of the drawer and of an indorser, who was a depositor of the defendant, when it was presented to a teller of the defendant, contributed to deception and loss of the plaintiff the next day when it paid the amount of the check to the defendant through a clearing house credit was warranted by evidence that a man unknown to the defendant's teller presented the check, that the teller did not ask for any identification or compare the indorser's signature with the signature of the defendant's depositor in its files, that the teller called the plaintiff and, although learning that there was no account there in the name of the drawer but only a conservator's account for a person with a name resembling that of the drawer, cashed the check and indorsed it payable to "the order of any bank" and "prior endorsements guaranteed." [472]

Where it appeared in an action that a teller of the defendant, a bank, negligently cashed a forged check drawn on the plaintiff, another bank, for an impostor whom the teller could describe only inadequately and who was never located despite much effort after he had left the defendant bank with the money, that thereafter the plaintiff erred in "receiving the check upon the clearing house balances" on its presentation by the defendant as holder and crediting the defendant with its amount instead of returning it to the clearing house and erred in charging the amount of the check to an account with the plaintiff not that of the drawer of the check until the plaintiff learned of the forgery nine days later, there was no error of law in a conclusion by the trial judge that the conduct of the plaintiff with respect to the check was not prejudicial to the defendant and had no "causal relation . . . to the damages sustained"; and such conduct was not a bar to the plaintiff's recovery of the amount of the check from the defendant as money paid under a mistake of fact. [472–473]

In an action of contract or tort heard without jury in which count one of the plaintiff's declaration was based on negligence and count two was based on money had and received, and facts established in the trial court warranted recovery only on count two but the judge found for the plaintiff on count one and declined to make a finding on count two, this court on overruling exceptions of the defendant ordered the finding for the plaintiff on count one vacated and judgment in the same amount entered for the plaintiff on count two. [473–474]

CONTRACT OR TORT. Writ in the Superior Court dated November 19, 1953.

The action was heard by *Macaulay*, J.

*John P. Dunn*, for the defendant.

*James S. Gratton*, for the plaintiff.

SPALDING, J. This action of contract or tort is brought to recover funds paid to the defendant bank as holder of a forged check. The declaration is in four counts: (1) negligence, (2) money had and received, (3) account annexed, and (4) warranties arising from the defendant's indorse-

ment of the check.   The case was tried to a judge who found for the plaintiff on the negligence count and declined to make findings on the other counts.

The judge made careful and complete findings of fact, which included the following.   On September 9, 1952, an unknown man entered the offices of the Worcester County Trust Company (hereinafter called the defendant) and presented a check to one of the defendant's tellers.   The check, dated September 5, 1952, was drawn on The Mechanics National Bank of Worcester (hereinafter called the plaintiff); it was payable to "cash" in the sum of $3,940 and was signed "Anthony A. Borgatti."   On the reverse side it bore the indorsement "Ralph Scola."   The "S" in Scola had been written over.   The person presenting the check also presented a deposit slip in the amount of $340 in the name of Ralph Scola.   Although there are similarities, the name Ralph Scola on the deposit slip did not "appear to be in the same handwriting" as the indorsement.   (The defendant had a depositor named Ralph Scola.)   The defendant's teller took the check and the deposit slip from the man who was unknown to him without asking for any identification and without comparing the signature on the check with the signature of Scola in its files.   The teller had heard that there was a depositor named Ralph Scola but was not familiar with his signature.   Upon presentation of the check and the deposit slip, the teller by telephone asked an employee in the plaintiff's bookkeeping department whether Anthony A. Borgatti had sufficient funds in his account to cover the check.   The plaintiff's employee, after investigation, told the teller that there was no such account but there was an account under the name of "Brigida Borgatti, Conservator for Antonio Borgatti."   The teller replied that "Anthony and Antonio were the same thing in Italian" and hung up.   He then, as requested, credited Scola's account with a deposit in the amount of $340 and paid over $3,600 in cash to the person presenting the check.   The defendant stamped the check with its indorsement, which stated that it was payable to "the order of any bank, banker or trust co." and that "prior indorsements [were] guaranteed."

The next day the defendant, as holder, presented the check for payment at the Worcester Clearing House and the plaintiff paid it by crediting the defendant's clearing house balance. On the same day the plaintiff erroneously charged the check to the account of Brigida Borgatti, conservator for Antonio Borgatti. The signature of the purported drawer of the check, "Anthony A. Borgatti," and the signature of the purported indorser, "Ralph Scola," were forgeries. The plaintiff learned of the forgeries on September 19, when an overdraft occurred in the conservator's account, and it notified the defendant of this fact on the same day. The defendant, upon learning that Scola knew nothing of the $340 deposit, charged this amount to his account and paid it to the plaintiff. By this payment the amount of the plaintiff's loss was reduced to $3,600 and it is this sum that the plaintiff seeks to recover in this action. Other facts will be stated as occasion requires.

1. The defendant's first contention is that the plaintiff is barred from recovery by reason of certain provisions in the constitution of the Worcester Clearing House of which both parties were members. The pertinent provisions are set forth below.[1] The defendant argues that these provi-

---

Article IX.

[1] "Section 4. Errors in the exchanges and claims arising from the return of checks, or other cause, are to be adjusted directly between the banks which are parties therein, and not through the Clearing House.

"Section 5. (a) An Afternoon Exchange for return items which have been received in the check clearings of the same or the next preceding business day shall be made at the Clearing House at 2:30 o'clock P.M. on each regular business day (excluding Saturdays) and at 12:00 o'clock noon on each Saturday on which check clearings shall be made.

"(b) While every member must participate in the Afternoon Exchange, a member may elect to return items by hand, in which case they shall be delivered to the Return Teller of the presenting member not later than the business day next succeeding that on which the same were received and in any event not later than 3:00 o'clock P.M. of the day of return, or, if returned on Saturday, not later than 12:00 o'clock noon. Upon receipt of such items, the receiving member shall immediately refund to the member returning the same, by its own check or due bill or check on a Boston bank, at the option of the returning member, the amount received through the clearings for the items thus returned.

"(c) Items missent in the Afternoon Exchange must be returned by hand the same afternoon before 3:45 o'clock P.M. or, if on Saturday, before 12:45 P.M.

"(d) Every member must participate in the Afternoon Exchange. The receipts taken for items delivered at the Afternoon Exchange shall be treated as checks of the signing members and shall be charged through the regular morning clearings on the next succeeding business day."

sions are binding on the parties and that a forged check is a "return item" within the purview of § 5 and therefore must be returned, if ever, within the time limits of that section. Admittedly, the check was not returned within these limits. The plaintiff, on the other hand, contends that "return items" means "missent" items and that § 5 is inapplicable. It argues, therefore, that a forged check is not a "return item" under § 5, but rather comes under § 4 dealing with "[e]rrors in the exchanges and claims arising from the return of checks, or other cause," and which provides that such matters "are to be adjusted directly between the banks which are parties therein, and not through the Clearing House."

We have no doubt that banks, through clearing house rules to which they have subscribed, may foreclose their right to return a check after a certain time. But any agreement to do so must be clear. Thus it has been held that in the absence of clear and explicit provisions barring the right of a bank to return forged items after a given time that right is not lost. *Merchants' Natl. Bank* v. *National Eagle Bank,* 101 Mass. 281. *National Bank* v. *Bangs,* 106 Mass. 441. *Merchants' Natl. Bank* v. *National Bank,* 139 Mass. 513, 519–520. *Metropolitan Trust Co.* v. *Federal Trust Co.* 232 Mass. 363. In our view of the case it becomes unnecessary to determine whether the transaction under consideration is governed by § 4 or § 5 of the clearing house constitution. If we assume that § 5 applies, the plaintiff is not barred from recovery. This is made clear by the cases just cited where somewhat similar rules were involved. Thus in *National Bank* v. *Bangs, supra,* it was said at pages 443–444, "The signature of the drawer proved to be a forgery. As the discovery of the forgery was not made in time to enable the plaintiff to return the check, as of absolute right, under the rules of the clearing-house, we think the case must stand as if the payment had been made directly at the plaintiff's counter, in the ordinary mode. The right of return, secured by the rules of the clearing-house, is a special provision, in compensation for payment

without inspection. Instead thereof, the rules give opportunity for subsequent inspection. When that has been had, the special rules cease to govern; and the rights of the paying bank rest upon the general principles of law. . . . But, in applying those general principles, it was held in *Merchants' Natl. Bank* v. *National Eagle Bank* . . . that the drawee of a check, who paid it without inspection, under the provisions of the clearing-house rules [there being no funds of the drawer in the drawee's hands at the time of payment], might recover back the money, if there had been no actual laches on the part of the drawee, and no change of position on the part of the holder; notwithstanding 'the failure of the bank to return a check by one o'clock' as allowed by the rules. The failure in that case was by accident, and involved no neglect.'' This principle is applicable here. The ruling of the judge that the plaintiff was not barred by the clearing house rules was right. Since this conclusion would be the same if the question put to the witness Cunningham had been allowed, we need not concern ourselves with whether its exclusion was error.[1]

2. The general rule is that money paid under a mistake of fact can be recovered. An important exception to this rule is that, where the equities are equal, a drawee of a check bearing a forged drawer's signature cannot recover from the person who has presented the check to the drawee and has received payment. This is the doctrine of *Price* v. *Neal*, 3 Burr. 1354, which is law in this Commonwealth. *Dedham Natl. Bank* v. *Everett Natl. Bank*, 177 Mass. 392. *South Boston Trust Co.* v. *Levin*, 249 Mass. 45, 49. The reason for the rule was stated in *Danvers Bank* v. *Salem*

---

[1] One Cunningham, an assistant vice-president of the defendant, was called by the defendant and testified that he ''had experiences with respect to the Worcester Clearing House rules on forged checks.'' He was then asked to tell what those experiences were. Upon objection the question was excluded. The defendant then offered to prove ''that on two separate occasions . . . checks where a signature of the drawer had been forged, were presented by the Worcester County Trust Company after the three o'clock deadline under Clearing House rules to a member of the Worcester Clearing House Association and that reimbursement was denied the Worcester County Trust Company on the ground that the presentment of the return item was late, and that all obligations on the part of the other member bank had ceased on the expiration of the period of time set forth in the Clearing House rules.''

*Bank,* 151 Mass. 280, where it was said at pages 282–283, "It is presumed that the bank knows the signature of its own customers, and therefore is not entitled to the benefit of the rule [permitting a party to recover back money paid under a mistake of fact]."[1]

For the *Price* v. *Neal* exception to apply, however, it is necessary that the party presenting the check does not contribute to the deception of the drawee. Thus it was said in *Danvers Bank* v. *Salem Bank, supra,* at page 283: "In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud." The plaintiff places great reliance on the *Danvers Bank* case and it is apparent that the trial judge considered that case to be controlling. We shall, therefore, proceed to an analysis of that decision. There a check in the amount of $188 was drawn on the plaintiff bank purportedly by one of its depositors, but in fact the drawer's name was forged. The check was payable to a named payee or bearer. It was presented to the defendant bank by an unknown person who was not the named payee. The defendant's teller, without requiring the person to identify himself, asked him to indorse the check, and he did so by writing the name of the payee on the back of the check. The teller then cashed the check. Subsequently, the drawee charged the amount of the check to the depositor in whose name it was drawn and credited the amount to the account of the defendant. Upon discovery of the forgery about two months later, the plaintiff immediately notified the defendant. The trial judge found that the defendant was negligent in cashing the check without more inquiry into its genuineness; that the plaintiff

---

[1] Dean Ames, however, explains the rule as based on "that farreaching principle of natural justice, that as between two persons having equal equities, one of whom must suffer, the legal title shall prevail." The Doctrine of Price v. Neal, 4 Harv. L. Rev. 297, 299 (1891).

was also negligent in not detecting the forgery sooner; but that this negligence had not prejudiced the defendant. He accordingly found for the plaintiff. In affirming, this court held that a finding of negligence on the part of the defendant was amply warranted. "The person who presented the check to the defendant bank was not known to either of its officers, and was not one of its customers. No attempt to have him identified was made, and without identification the money was paid over upon his indorsement . . . . The nominal drawer of the check, whose name was forged, was not a customer of the defendant. It is altogether probable that, if the defendant before it cashed the check had made proper inquiry, the utterer of it would not have remained to encounter any such investigation, and if he had, it would readily have been ascertained that he was not [the payee]" (pp. 283–284).

The facts in the *Danvers* case are singularly similar to those in the case at bar, and we are of opinion that that decision is controlling. Here the trial judge expressly found that the defendant was negligent in cashing a check of the size of the one involved without making further inquiry. And there was the added circumstance of the defendant's teller calling the plaintiff and learning that there was no account standing in the name of the purported drawer. We are mindful that in the *Danvers Bank* case there was evidence of a general custom of banks requiring identification of a person presenting a check in similar circumstances. There was no such evidence here. Nevertheless, we are of opinion that the absence of such evidence did not preclude the judge from finding negligence.

3. We turn now to the question of whether the conduct of the plaintiff with respect to the check is a bar to recovery. The judge found that the plaintiff erred in "receiving the check upon the clearing house balances." He found, however, that this error was not the cause of the loss, for if the plaintiff had disclaimed the check the defendant "would have been the party damaged by the . . . [conduct] of its own teller." The judge also found that

the plaintiff erred in debiting the amount of the check to the conservator's account. He found, however, that this mistake was not harmful to the defendant. In support of this conclusion the judge said, "It is true that upon discovery of the fraud . . . the plaintiff would be under a duty to notify indorsers and all other persons interested of its discovery to reduce any loss that they might entail. But the plaintiff . . . performed this duty with immediate dispatch to the defendant . . . . As to the claim that if the plaintiff had returned the check to the clearing house instead of debiting it to the conservator's account, the defendant would be in a better position to more quickly investigate and ascertain who the impostor was for any possible recovery, it appears that this is only in the realm of possibility and not of probability since the teller could only give a very inadequate description of the impostor . . . [who] has never been located despite much effort . . . . The damage was done . . . when the impostor walked out of the bank with the money." The judge "concluded that there was no contributory negligence on the part of the plaintiff," and, "particularly, there was no contributory negligence on the part of the plaintiff . . . that had any causal relation with the acts that eventually led to the damages sustained." Whether the defendant was prejudiced by the plaintiff's conduct was essentially a question of fact. We cannot say that the conclusions of the judge on this issue were erroneous or tainted by error of law.

4. Although not raised by the parties, a question of pleading should be noticed. The judge found for the plaintiff on the first count, which sounded in tort for negligence. The true basis for recovery in a case such as this is for money paid under mistake of fact. *Dedham Natl. Bank* v. *Everett Natl. Bank,* 177 Mass. 392, 396. Recovery in such a case is in contract for money had and received. *Gloucester Bank* v. *Salem Bank,* 17 Mass. 33. *Boylston Natl. Bank* v. *Richardson,* 101 Mass. 287. *National Bank* v. *Bangs,* 106 Mass. 441. *Merchants' Natl. Bank* v. *National Bank,* 139 Mass. 513. *Danvers Bank* v. *Salem Bank,* 151 Mass.

280. *Atlas Natl. Bank* v. *National Exch. Bank,* 176 Mass. 300. See *South Boston Trust Co.* v. *Levin,* 249 Mass. 45, 46. The second count of the declaration seeks recovery on this ground. As the facts necessary to recovery on this ground have been established, we are of opinion that the finding on the first count should be vacated and that judgment in the same amount should be entered on the second count. See G. L. c. 231, § 124; *Barry* v. *Keeler,* 322 Mass. 114, 129.

*Exceptions overruled.*

