connection with the established previous marriage, the relation between the plaintiff and defendant concededly had a meretricious beginning, established by the plaintiff's own testimony that the defendant said he did not care whether she had 50 husbands, and that she had slept with him at a hotel before any agreement was made for her to go and live with him, the presumption is that that meretricious relationship continued. This presumption could only be destroyed by clear and convincing proof of a subsequent marriage. It seems clear that such marriage had not taken place down to the 17th of July, 1899, when the supplementary agreement hereinbefore set forth was entered into of that date; and there is no claim that since said date any agreement of marriage per verba in præsenti has been entered into. If it should be now assumed that Krabiel is dead, more than seven years having elapsed since the plaintiff last saw him, so that there would be room for the presumption, which has been indulged in certain cases, that after the removal of the obstacle there had been a remarriage, such a conclusion is not warranted by the evidence in this case, where the only marriage alleged in the complaint, found by the court, if supported at all in the evidence, was testified to as on or about January 15, 1894. The burden is upon the plaintiff to establish a valid and existing marriage before she can obtain a decree of separation. This she has failed to do.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

CITIZENS' CENT. NAT. BANK v. NEW AMSTERDAM NAT. BANK.

(Supreme Court, Appellate Division, First Department.   November 13, 1908.)

BANKS AND BANKING (§ 320*) — CLEARING HOUSES — RULES—TIME LIMIT FOR RETURN OF CHECKS.

Rule 1 of the New York Clearing House Association, providing that the return of checks paid through the clearing house and found not good should be made before 3 o'clock of the same day, does not entitle a bank which has received payment of a check, not good, through the clearing house, to refuse to refund the amount received because the check is not returned until after 3 o'clock, where an attempt is promptly made after discovery that the check is not good to return it within the time limit, and there has been no change in the meantime to the detriment of the bank to which returned.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1226; Dec. Dig. § 320.*]

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Citizens' Central National Bank of New York against the New Amsterdam National Bank of New York. From a judgment for plaintiff (109 N. Y. Supp. 872), defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Parker & Aaron (Herman Aaron, of counsel), for appellant.
Shearman & Sterling (John A. Garver, of counsel), for respondent.

CLARKE, J. Plaintiff and defendant are members of the New York Clearing House Association, instituted to facilitate banking transactions in the city of New York. Its scheme of operation is clearly described in Mt. Morris Bank v. Twenty-Third Ward Bank, 172 N. Y. 244, 64 N. E. 810, as follows:

"That association appears by its constitution to have adopted a very simple manner of settling the drafts, checks, and other claims of its various members against the others. Each member, every morning, delivers to the clearing house the checks, drafts, and notes it holds against the other banks, and receives credit therefor, while it is charged with all checks, drafts, or notes payable by it and deposited by other banks. If its deposits exceed the drafts and checks deposited against it, it receives from the clearing house during the day the amount of the excess in money, while if the reverse proves the case it is obliged to pay the balance against it to the clearing house. In this daily settlement of the clearing house no account is taken of the fact that the checks may be bad. All checks, drafts, or notes on any bank are charged against it, though the accounts of the drawers of those checks or the makers of the notes may not be good for their amounts, and even though the checks be forgeries. By section 14 of the constitution it is provided that the association shall be no way responsible for such items, but that they are to be adjusted directly between the bank that deposited them in the clearing house and the bank on which they were drawn. Section 15 provides that 'All checks, drafts, notes or other items in the exchanges returned as "not good" or missent, shall be returned the same day directly to the bank from whom they were received, and the said bank shall immediately refund to the bank returning the same the amount which it had received through the clearing house for the said checks, drafts, notes, or other items so returned to it in specie or legal tender notes.' It will be seen that the system of clearances adopted by the association is very simple, and that it enables exchanges of the greatest magnitude to be effected in a remarkably brief period of time."

Rule 1 of the rules of the Clearing House Association provides as follows:

"Return of checks, drafts, etc., for informality, not good, missent, guarantee of endorsement or for any other cause, should be made before three o'clock of the same day."

On December 5, 1907, one Alfred Epstein, who then had a deposit account with the plaintiff bank, drew a check on the plaintiff to the order of Aster Company for $2,000. The said check was duly indorsed by the said Aster Company and deposited in the defendant bank. On the morning of December 6, 1907, the said check was included among the checks presented by the defendant to the clearing house for payment, and the amount thereof was charged against the plaintiff and paid by it. After such payment and return of said check to the plaintiff, and on the same day, between half past 2 and 25 minutes of 3 in the afternoon, the plaintiff sent the said check by its messenger, who testified that he went at once as direct as he possibly could to the bank of the defendant at Broadway and Thirty-Ninth street, and presented the check to the paying teller and demanded the money for it. This presentation and demand was made from 4 to 10 minutes after 3 o'clock in the afternoon. The defendant refused to return the said sum, upon the ground that the demand, having been made after 3 o'clock, was too late. There was no evidence that any change in the situation to defendant's detriment had occurred. Thereupon this action was brought, and a jury having been waived, the learned trial court made its deci-

sion in writing, and judgment was entered thereon in favor of the plaintiff, from which judgment this appeal is taken.

It appears that the drawer of the check, Epstein, for some days prior to the date thereof, had to his credit in the plaintiff bank only the sum of $143.73, which deposit had not been increased up to the time of the trial of the action. The question involved is the meaning, force, and effect of the provisions of the constitution and rules of the clearing house, which bound both banks as members thereof. No case in this state has been cited to us which bears directly upon the point at issue. The Supreme Judicial Court of Massachusetts has, however, construed somewhat similar provisions of the constitution and rules of the Boston Clearing House. In Merchants' National Bank v. National Eagle Bank, 101 Mass. 281, 100 Am. Dec. 120, the rule under consideration was the following:

"Whenever checks are sent through the clearing house which are not good, they shall be returned, by the banks receiving the same, to the bank from which they were received, as soon as it shall be found that said checks are not good; and in no case shall they be retained after 1 o'clock."

The language of the New York rule that the "return of checks should be made before three o'clock of the same day" does not seem to be so imperative as the Boston rule, "and in no case shall they be retained after one o'clock." It appears in the above case that at a quarter before 1 o'clock the bookkeeper handed four checks to the messenger with directions to return them to the banks, with whose numbers they were marked, as not good, and to collect the amounts of them from those banks. The messenger made a mistake as to the number on one of the checks, went to the wrong bank with it, and was obliged to return to the plaintiff banking house in order to ascertain the true number. In consequence of this mistake, it was from 5 to 7 minutes after 1 o'clock when he presented the check in question at the defendant's banking house, where payment was refused on the ground that it had not been presented before 1 o'clock. The court said:

"Under this arrangement, the payment required of the clearing house to a creditor bank upon a check presented must be regarded as only provisional, until the hour of 1 o'clock, to become complete only in case the check is not returned at that time. And if by any mistake of fact the return of the check is not so made, then, as between the two banks, it is to be treated as a payment made under a mistake of fact, precisely to the same extent, and with the same right to reclaim, which would have existed if the payment had been made by the simple act of passing the money across the counter directly to the payee on the presentation of the check. The manifest purpose of the provision is to fix a time at which the creditor bank may be authorized to treat the check as paid, and be able to regulate with safety its relations to other parties. We cannot adopt the theory that a failure to present a bad check, before the time named, to the bank sending it through the clearing house, works an absolute forfeiture, and is in itself a perfect bar to any action to recover the amount of such check. The whole arrangement, in all its provisions and declared purposes, is to be construed together. And the law will not construe any portion so as to subject parties to a penalty or forfeiture of their rights, where other reasonable interpretation can be given which will give effect and consistency to the whole. The parties have in terms affixed no penalty or forfeiture to the stipulation under consideration, and a failure to comply with its terms must leave the parties in the same position and precisely as they would stand when a payment is made under a mistake of fact in the ordinary

way. After 1 o'clock the defendants, upon the failure to return the check, had the right to consider it paid, and to treat it so in their dealings with others. The report finds that the delay in its return was occasioned by a mistake on the part of the messenger, a mistake which was quite as much a mistake of fact as if it had been produced by the false time of the clock which was relied on."

The court also considered the force of that part of the rule which reads, "In no case shall they. be retained after one o'clock, and said that, if necessary to save the forfeiture, it would hold that the delivery to the messenger before 1 o'clock with sufficient time to reach the bank before that hour would be enough to satisfy the requirement that the check should not be retained after 1 o'clock.

This case was cited with approval in Manufacturers' Bank v. Thompson, 129 Mass. 438, 37 Am. Rep. 376; Exchange Bank v. Bank of North America, 132 Mass. 147. And in Merchants' National Bank v. National Bank of the Commonwealth, 139 Mass. 513, 2 N. E. 89, the court said:

"If it were intended that mistakes should never be corrected unless discovered by 1 o'clock, this should in terms explicitly appear. As it does not, it seems to us the more correct interpretation to hold that the rule authorizes the bank receiving the check, after 1 o'clock arrives and the check is not returned, to treat it in all transactions as if it were good. If, therefore, the bank changes its position, it will suffer no loss by reason of it. On the other hand, if the mistake is discovered after 1 o'clock, and the bank receiving the check has not changed its position by reason of the expiration of the time, it should rectify the mistake when reasonable care has been exercised by the bank on which it was drawn."

The reasoning of these cases seems sound. It should be emphasized that while in the case at bar the language of the constitution of the clearing house is that the checks "shall be returned the same day directly to the bank from whom they were received," the rule seems to be rather advisory than mandatory, reading that the return "should be made before three o'clock of the same day." There is no question in this case of a voluntary payment over the counter where the laches of a paying teller in not discovering that the depositor's account was not sufficient to warrant the paying of the check might under certain circumstances not be considered as constituting a payment by mistake which could be recovered or save the operation of the rule that a payment in due course discharges the check. The fact is, as in the Merchants' National Bank Case, 101 Mass. 281, 100 Am. Dec. 120, that the fact that the check was not good was discovered by the plaintiff bank some little time before the hour at which the defendant bank had the right to consider and treat the check as good, and that an attempt was promptly made to return the check within the time limited. But as the defendant bank was an uptown bank, the messenger arrived there a very few minutes after 3 o'clock. This is precisely the same kind of a mistake of fact as existed in the Massachusetts case cited, where the bank attempted to return in time but the messenger failed to arrive in time. In each case no harm came to the defendant. It had lost no rights against the maker of the check or the indorser thereon. It had the right to present and protest, and, satisfied as we are with the reasoning of the Supreme Judicial Court of Massa-

chusetts, we think the refusal of the defendant to repay the amount received under the circumstances disclosed was arbitrary and unwarranted by the language of the clearing house provisions.

It follows, therefore, that the judgment appealed from should be affirmed, with costs and disbursements to the respondent.

PATTERSON, P. J., and LAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). It is not disputed but that, if this check had been presented to the plaintiff and paid, the plaintiff could not have recovered the amount from the defendant on the ground that the account of the drawer of the check was not good, or that a mistake had been made in paying the check. The check, however, was presented to the plaintiff through the clearing house and paid in that way. The plaintiff bases its claim that it is entitled to repayment upon the ground that a payment through the clearing house was not a voluntary payment, and therefore, as the balance due the drawer of the check by the plaintiff did not equal the amount called for by the check, the plaintiff was entitled to recover back from the defendant the amount that the defendant received in payment of the check.

The New York Clearing House Association is a voluntary association organized by the several banks in the city of New York of which both the plaintiff and defendant are members, the object of the association being "the effecting at one place of the daily exchanges between the several associate banks, and the payment at the same place of the balances resulting from such exchanges." The association of banks had thus united to avoid the necessity of presenting at each bank the checks drawn on it, and provided a method whereby all checks drawn on the associated banks should be paid at one time and place, so that each bank could receive for the checks held by it upon associated banks the amount called for by them. It was an entirely voluntary association, and no bank was bound to collect its checks through the association. It was simply a method adopted to save the trouble and expense of the individual presentment of each check to the bank upon which it was drawn.

By section 12 of the constitution of this voluntary association it was provided that the hour for making exchanges at the clearing house should be 10 o'clock a. m. precisely. The method adopted seems to have been that at that time each bank presented to the manager of the clearing house the checks upon associated banks that it had received during the preceding day, and a statement was then made up showing the balance due by or to each of the associated banks, which was the difference between the amount of the checks drawn on that particular bank that had been presented to the clearing house for payment and the credits to which that particular bank was entitled in consequence of the checks drawn on the other associated banks which it had presented. Between half past 12 and half past 1 of the same day the debtor banks were required to pay to the manager of the clearing house the balance against them, and at half past 1, or as soon thereafter as the amounts can be made up and proved, the creditor would receive from the manager, at the same place, the respective balances due to them.

The manager of the Clearing House Association was by this arrangement made an agent of each associated bank to pay each check upon such presentation, and to pay to each bank any credit balance that was payable to it, and each bank by its payment to the manager was discharged from the obligation for the checks drawn upon it and for which it had paid to the manager of the association the amount called for by them. It seems to me to follow that when any particular bank had been paid the balance due to it for the checks that it had presented to the association drawn upon other banks, in the absence of any regulation as between the banks to the contrary, it would be a voluntary payment, as if such check had been presented directly to the drawee bank, and the same rule would apply that would arise from the presentation of a check as to the drawee bank itself and payment thereof by the drawee. There was no duress or mistake. No bank was compelled to adopt this method in securing payment of the checks drawn upon the other banks, and it was adopted purely as a method of "payment, at the same time and place, of the balance resulting from such exchanges."

The banks, however, recognized that a bank upon which checks were drawn would have no opportunity of ascertaining whether or not they were good or were to be paid and they therefore adopted a means by which any bank upon which a check was drawn could return it to the bank presenting it if for any reason it should decline to pay it. But it seems to me that to avoid the effect of the voluntary payment by the drawee bank the drawee bank must bring itself within the rule adopted by the associated bank themselves, which would entitle a bank upon which a check had been drawn to return the check. To accomplish that purpose it was provided that "all checks, drafts, notes or other items in the exchanges, returned as 'not good' or missent, shall be returned the same day directly to the bank from whom they were received, and the said bank shall immediately refund to the bank returning the same the amount which it had received through the clearing house for the said checks, drafts, notes, or other items so returned to it, in specie or legal tender notes." And then by a rule of the Clearing House Association which it is conceded bound all the associated banks it was provided that:

"Return of checks, drafts, etc., for informality, not good, missent, guarantee of endorsement, or for any other cause, should be made before three o'clock, of the same day."

The associated banks having thus provided a rule by which checks could be returned to the banks which had presented them and received payment for them, it seems to me entirely clear that to avoid the effect of a voluntary payment this rule must be strictly complied with.

It is not disputed but that the banking day closed at 3 o'clock, and that to make a valid presentment of a check or draft drawn upon a bank it must be presented to the bank upon which it was drawn before 3 o'clock of the day it was due. Any bank would be justified in refusing to pay a check or draft drawn upon it presented after the close of business on any particular day, and the associated banks, recognizing this fact, had provided that a check which was to be returned

must be returned within the business hours of the day upon which it had been presented to the bank which had obtained payment thereof through the clearing house. There can be no question but that this was a perfectly reasonable regulation voluntarily adopted by the associated banks for their own protection, and a failure to return a check within the time fixed by the constitution and by-laws of the association clearly, it seems to me, left the interested banks in the position of having accepted and paid the check, and the rules of law applicable to such a paid check applied. It is no answer to this to say that the bank that had received the amount of the check must show itself to be injured by the delay, as, if the rule was not complied with, the drawee bank lost the right to return the check. It was not a penalty imposed for not returning it, but the waiver of a right to return it. But the bank presenting the check would be affected by its return after the close of business hours of the day upon which it was received and presented for payment in relation to its claim to hold the indorser upon any such instrument for nonpayment of the check. To hold such an indorser it was bound to present the check to the bank upon which it was drawn within a reasonable time after its receipt, and in the event that the check was not paid to protest the check for nonpayment. There had been no presentment within this rule except the presentment of the clearing house, and by the rules of the clearing house that check had been paid by the failure of the bank upon which it was drawn to return it before 3 o'clock of the day upon which it was presented. Under such circumstances there certainly would be presented a serious question as to whether the indorser was not discharged. If defendant had received payment of the check it could not recover for its depositor the amount, because the bank upon which it was drawn had subsequently ascertained that the account was good, and the effect of the plaintiff's not returning the check before 3 o'clock was that as between the banks it was paid.

The case solely relied on in the prevailing opinion is that of Merchants' National Bank v. National Eagle Bank, 101 Mass. 281, 100 Am. Dec. 120. The ruling in that case, which was affirmed, was that, if the plaintiffs delivered the check to a messenger before 1 o'clock, to be returned to the bank depositing it, in the usual course of their business, and with time sufficient, in the absence of any accident or mistake, to reach the depositing bank by 1 o'clock, it would be a compliance with the vote, especially in view of the language of the vote that the bank should not retain the checks after 1; but that, irrespective of the peculiar working of the vote, the failure of the bank to return a check by 1 o'clock could be a defense to the depositing bank only to the extent that such bank was injured by such delay. And the affirmance of that instruction was based upon the fact that the particular check in that case was not returned in consequence of a mistake of fact. The court, in discussing the clearing house rule in that case, said:

"If by any mistake of fact the return of the check is not so made, then, as between the two banks, it is to be treated precisely to the same extent, and with the same right to reclaim, which would have existed if the payment had been made by the simple act of passing the money across the counter directly

to the payee on the presentation of the check. The manifest purpose of the provision is to fix a time at which the creditor bank may be authorized to treat the check as paid, and be able to regulate with safety its relations to other parties."

In this case there was no evidence that there was any mistake of fact in relation to this check, and it seems to be conceded that if, under the circumstances here disclosed, the check·had been actually paid over the counter, the plaintiff would not be entitled to recover. Here the failure to return the check before 3 o'clock was, under the rule adopted by the Supreme Court of Massachusetts, equivalent to payment over the counter. I think, therefore, even applying the Massachusetts rule, that the payment must be treated as a voluntary payment, and that the plaintiff is not entitled to recover.

I think the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.