THE CORN EXCHANGE BANK, Plaintiff, *v.* THE FIFTH NATIONAL BANK, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Ninth District, June 11, 1924.

**Banks and banking — action for repayment of forged check bearing defendant's guaranty of indorsement — signature and indorsement forged — defendant waived Clearing House rules requiring return of forged check — counterclaim dismissed and judgment for plaintiff.**

The plaintiff is entitled to judgment and the dismissal of the defendant's counterclaim, in an action for the repayment of a forged check charged to its account by the New York Clearing House, where it appears that the check, the signature and indorsement of which were forgeries, was paid by the defendant bank on January 3, 1922; that on the same day the plaintiff, discovering that the drawer of the check had insufficient funds with which to meet it, requested the defendant to waive the rule of the Clearing House requiring the return of a check by three o'clock, which defendant agreed to do; that in compliance with their agreement plaintiff returned the check on January fourth and received payment; and that on January seventh the same check was presented for payment by the defendant to the New York Clearing House and charged to the plaintiff, who before three P. M. of that day demanded repayment from the defendant, since the defendant waived the return of the check on January third, and if it were now permitted to withdraw its waiver it would cause damage to plaintiff which, relying upon the waiver, failed to return the check on January third within sufficient time to conform to the liberal interpretation of the Clearing House rule.

ACTION for repayment of forged check.

*Laughlin, Gerard, Bowers & Halpin* (*Stewart W. Bowers*, of counsel), for the plaintiff.

*Richard Kelly*, for the defendant.

SPIEGELBERG, J.   On January 7, 1922, the defendant presented a check upon the plaintiff to the New York Clearing House.   The check purported to be drawn by Ralph H. Goldberg to the order of Louis S. Frappier.   The check was indorsed in blank with the name of the payee and bore the defendant's guaranty of the indorsement.   The check was provisionally paid in the morning of January seventh.   Both the signature and the indorsement were forgeries.   At the time of presentation both banks had knowledge of the forgery.   When the plaintiff ascertained that it had been charged by the Clearing House with the check, it promptly, before three o'clock on that day, made demand for repayment which the defendant declined to make.

The Clearing House is an association created for the purpose of facilitating exchange and the adjustment of accounts between its members.   The indebtedness of a bank by reason that more checks in amount are drawn upon it than it presents is paid by the bank, and if there is a balance in its favor it receives payment from the Clearing House.   The Clearing House does not assume any responsibility for mistakes, and all differences due to bad or forged checks are adjusted by the individual banks.   Section 15 of the constitution of the Clearing House provides: " All checks, drafts, notes or other items in the exchanges returned as ' not good ' or missent, shall be returned the same day before three o'clock in the afternoon directly to the bank from which they were received, and the said bank shall immediately refund to the bank returning the same the amount which it had received through the Clearing House for the said checks, drafts, notes or other items so returned to it in specie or legal tender notes."

In this case the forged check was returned before three o'clock, and thus the plaintiff's right to recover seems clear.

The defendant, however, resists payment upon the following grounds: The same check was presented by the defendant for payment on January 3, 1922, and was paid in the usual course of business.   The check was drawn on the One Hundred and Eighty-first street branch of the plaintiff bank.   That branch had no depositor named Ralph H. Goldberg.   The plaintiff ascertained that fact in ample time to return the check to the defendant before three o'clock on the day of presentation.   But, instead of doing so, it made inquiries at its other branches, and found that its Audubon

branch had a depositor of that name, but that the amount to his credit was insufficient to meet the check. Due to the delay occasioned thereby the plaintiff was unable to return the check by three o'clock and thereupon requested the defendant to accept the return on the following day. The defendant bank complied with that request. The check was returned the next day, and the plaintiff received payment from the defendant. After the payment of the check the plaintiff informed the defendant that the signature of the maker was a forgery, and then the defendant ascertained that the indorsement was likewise forged. The plaintiff, if it had made prompt investigation, could have discovered the forgery of the name of the maker prior to the payment by the defendant on January 4, 1922.

It is quite apparent that these facts do not establish a defense to the plaintiff's cause of action. However, the defendant pleads them both as a defense and a counterclaim. I am of the opinion that they constitute neither one nor the other. The return of the check by three o'clock in the afternoon of January third was waived by the defendant. It is of course competent for the parties to waive the rule of the Clearing House as to the return of checks within the prescribed time. *Stuyvesant Bank* v. *National Mechanics' Banking Association,* 7 Lans. 197. When the defendant paid the check on January fourth the incident was closed. It does not lie with the defendant to say that it would have not received the check after three o'clock on January third had it known or been informed that the signature of the maker was a forgery. The consent was given unconditionally. It is not claimed that the plaintiff knew of the forgery prior to the payment by defendant or was guilty of fraud in concealing that fact. That the plaintiff could have ascertained the forgery before three o'clock on January third does not avail the defendant, especially in view of the fact that it was chargeable with carelessness in guaranteeing the forged indorsement to be genuine. It could have limited its consent to the contingency upon which the request was made, namely, that the depositor's account with the plaintiff was overdrawn. But it does not do so.

It does not appear that the position of the defendant was in any wise changed through the late return of the check and its failure to be informed of the forgery before three o'clock on January third. On the other hand, if the consent of the defendant be construed as a qualified one and not covering the forgery, the plaintiff would suffer injury. It relied upon the consent of the defendant to make payment upon presentation on January fourth. But for that forbearance it could have returned the check, if

not before three o'clock on the afternoon of January third, at all events shortly thereafter. Taking the view most favorable to the defendant, the information that the check could not be presented in time was given from the Audubon branch of the plaintiff before three o'clock and could have been presented shortly thereafter. The time of transit between the points in New York city may be taken judicial notice of. If the check had been presented after three o'clock, the defendant could not have refused to pay it.

In *Citizens Central National Bank* v. *New Amsterdam Bank,* 128 App. Div. 554; affd., without opinion, 198 N. Y. 520, the court held that the Clearing House rule for the return of bad checks before three o'clock on the day of the provisional payment was not mandatory but advisory merely, and that when the position of the bank which had received provisional payment has not been changed, a slight delay in the return of the check to such bank is not sufficient ground for refusing to redeem it. The court followed the rule laid down in *Merchants' National Bank* v. *National Eagle Bank,* 101 Mass. 281. It was there held under a similar provision of the Boston Clearing House that the payment of the check required of the Clearing House to a creditor bank is provisional until the hour fixed for the return, and becomes complete in case the check is not returned at that time. If the return of the check is not made in time, then between the banks it is treated as made under a mistake of fact.

· The *National Eagle Bank* case was followed and approved in *National Bank of North America* v. *Bangs,* 106 Mass. 441; *Merchants Bank* v. *Bank of Commonwealth,* 139 id. 513, and *Metropolitan Trust Co.* v. *Federal Trust Co.,* 232 id. 363.

Referring to the *National Eagle Bank* case, the court says in the *Bank of Commonwealth* case (at p. 519): " It was there held that the manifest purpose of the provisions in the Clearing House rules was to fix a time at which the creditor bank was authorized to treat the check as paid, and so deal with it in its relations with others. The court declined to adopt the theory that a failure to return a bad check before one o'clock to the bank sending it through the Clearing House would work a forfeiture of the right to return it, or, of itself, constitute a bar to an action to recover its amount; and held that a failure to comply with a stipulation as to returning the check would leave the parties in the same position as when a payment is made under a mistake of fact in the ordinary way."

The court then adversely criticized the ruling in *Preston* v. *Canadian Bank of Commerce,* 23 Fed. Rep. 179, which held that the return of a check fifteen minutes after the stipulated hour was too late.

Supreme Court, June, 1924. [Vol. 123

In Watson on the Law of the Clearing House (p. 45), it is said: " In the absence of a very explicit provision to the contrary, the rule should be held only to fix an hour at which the banks sending the checks to the Clearing House are warranted in treating them as paid in their dealings with their depositors or others. This seems a sufficient object and accomplishment for the rule."

In the view that I take of this cause, the counterclaim cannot be sustained for the reason that the defendant waived the return on January third and if it were now permitted to withdraw its waiver it would cause damage to the plaintiff which, relying upon the waiver, failed to return the check on January third within sufficient time to conform to the liberal interpretation of the Clearing House rule adopted by the courts.

The plaintiff is entitled to judgment as demanded in the complaint, and the counterclaim is dismissed on the merits.

Judgment accordingly.